UNITED STATES DISTRICT COURT  
SOUTHERN DISTRICT OF NEW YORK  
----------------------------------------x  

CAVLAM BUSINESS LTD. and JEAN MAURICE BERGERON,

                           Plaintiffs,

      - against -

CERTAIN UNDERWRITERS AT LLOYD'S, LONDON,

                           Defendant.

----------------------------------------x

ECF CASE  
Judge Koeltl

Index No. 08 cv 2225

COMPLAINT

Jury Trial Demanded  
As To All Non-  
Admiralty Claims

      Plaintiffs Cavlam Business Ltd. ("Cavlam") and Jean Maurice Bergeron ("Bergeron"), by their attorneys, Lynch Rowin LLP, for their complaint against defendant Certain Underwriters at Lloyd's, London ("Lloyd's"), allege as follows:

FIRST CAUSE OF ACTION

1.     Plaintiffs bring this action for a judgment declaring their rights under an marine insurance policy issued to them by Lloyd's. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§1333 and 2201.

2.     Venue is proper in this district in that Lloyd's resides in the district.

3.     Cavlam is a corporation organized under the laws of the British Virgin Islands.

4.     Bergeron is a citizen of France and is the principal of Cavlam and sole owner

of all of the shares of Cavlam.

5.    On May 19, 1999, the Registrar of Shipping of the British Virgin Islands issued a Certificate of British Registry certifying that Cavlam is the owner of a 63 foot Bertram motor yacht named the "Amira" ("Yacht").

6.    Lloyd's is an insurance market organized under the laws of the United Kingdom and is engaged in the business of issuing and underwriting insurance policies, including marine insurance policies. Lloyd's has an office for the transaction of business at 25 West 53rd Street, New York, New York 10019, issues insurance policies within the State of New York and otherwise does business within the State of New York.

7.    In 2003, Bergeron, acting on behalf of Cavlam, purchased an insurance policy insuring the Yacht for the period March 7, 2003 through March 3, 2004 (the "2003 Policy") from Lloyd's agent, Yachtsure Insurance, International Marine Insurance Services, 208 Piney Narrows Road, Chester, Maryland 21619. The 2003 Policy was represented by Certificate of Insurance No. M/03/08661, was issued and underwritten by Lloyd's and provided that the Yacht was valued at and insured for $500,000 (with a deductible of $11,000) and that the dinghy and outboard were valued at and insured for $10,000 (with a deductible of $500). As written by Lloyd's agent, the 2003 Policy erroneously listed Bergeron and "Cavalam Ltd." as the insureds. The premium for the 2003 Policy was $8,210, which was duly paid by plaintiffs.

8. In 2004, Bergeron, acting on behalf of Cavlam, purchased an insurance policy insuring the Yacht for the period March 3, 2004 through March 3, 2005 (the "2004 Policy") from Yachtsure Insurance, International Marine Insurance Services. The 2004 Policy was represented by Certificate of Insurance No. M/04/08661, was issued and underwritten by Lloyd's and provided that the Yacht was valued at and insured for $500,000 (with a deductible of $11,000) and that the dinghy and outboard were valued at and insured for $10,000 (with a deductible of $500). As written by Lloyd's agent, the 2004 Policy erroneously listed Bergeron and "Cavalam Ltd." as the insureds. The premium for the 2004 Policy was $8,210, which was duly paid by plaintiffs.

9. The 2004 Policy insured the Yacht against the following perils:

> Touching the adventures and perils which we, the Assurers, are contented to bear, and to take upon us, they are of the seas, men-of-war, fire, enemies, pirates, rovers, assailing thieves, jettisons, letters of mart and countermart, reprisals, takings at sea, arrests, restraints and detainments of all kings, princes and people, of what nation, condition or quality soever, barratry of the Master and Mariners, and of all other like perils, losses and misfortunes, that have or shall come to the hurt, detriment or damage of said Yacht or any part thereof.

10. At all relevant times, the Yacht was maintained in a seaworthy condition and with all due diligence.

11. On or about December 12, 2004, Bergeron moored the Yacht along the wharf at a boatyard called Astillero & Varadero del Caribe, C.A. at Chacachacare, Isla de

Margarita, Venezuela. Bergeron then returned to France to attend to personal matters.

12. The crew employed by Bergeron remained on the Yacht for two days before leaving for Trinidad. They did not report any problems with the vessel.

13. On or about December 18, 2004 the Yacht sank while moored at the wharf of Astillero & Varadero del Caribe.

14. Lloyd's was given timely notice of the sinking of the Yacht.

15. The sinking of the Yacht was a peril covered by the 2004 Policy.

16. Lloyd's has notified plaintiffs that it declined to cover the sinking of the Yacht on the grounds that the Yacht was not maintained in a seaworthy condition, that the sinking was caused by ordinary wear, tear and deterioration and that, as a result, the sinking was not covered by the 2004 Policy.

17. Specifically, Lloyd's took the position that the sinking was caused by water leaking into the Yacht through (a) the port propeller shaft packing gland, (b) the port and starboard rudder shaft packing glands and mounting bolts and (c) a PVC pipe section in the centerline bilge sump forward of the aft cabin.

18. As a result of Lloyd's decision to deny coverage for the sinking of the Yacht, plaintiffs have incurred expenses they would otherwise not have had to incur, including storage charges imposed by the boatyard, the cost of retaining experts and attorneys' fees.

19. By reason of the foregoing, Lloyd's has breached the 2004 Policy and plaintiffs

have suffered compensatory and consequential damages.

## SECOND CAUSE OF ACTION

20. Paragraphs 1 through 18 are realleged.

21. In addition to declining coverage completely, Lloyd's has notified plaintiffs of its position that the actual value of the Yacht was $325,000 rather than the insured value of $500,000 and that even if the sinking of the Yacht were covered by the 2004 Policy, plaintiffs would be entitled to a maximum payment of $325,000.

22. By reason of the foregoing, Lloyd's has breached the 2004 Policy and plaintiffs have suffered compensatory and consequential damages.

## THIRD CAUSE OF ACTION

23. Paragraphs 1 through 18 and 21 are realleged.

24. At various times since the sinking of the Yacht, plaintiffs have retained marine experts to inspect the Yacht to determine the cause of its sinking.

25. In July 2005, Murray & Associates, LLC, a firm of marine surveyors, was retained by plaintiffs to survey the Yacht. In its report, dated January 2, 2006, Murray & Associates concluded that the only possible points of water ingress into the Yacht were from the port propeller shaft packing gland and the port and starboard rudder shaft packing glands, but that it would have taken 14 days for leakage from those entry points to cause the Yacht to sink. Murray & Associates concluded that the Yacht was not

unseaworthy and that the sinking was not the result of ordinary wear, tear and deterioration.

26. Plaintiffs provided the Murray & Associates report to Lloyd's.

27. In July and August 2005, Dr. Giorgio Neri, a marine engineer, was retained by plaintiffs to survey the Yacht and conduct various experiments. In his report, dated December 2005, Dr. Neri concluded that it was not possible for leakage from the port propeller shaft packing gland and the port and starboard rudder shaft packing glands to have caused the Yacht to sink.

28. Plaintiffs provided the Neri report to Lloyd's.

29. The Murray & Associates and Neri reports demonstrated that it was physically impossible for the Yacht to have sunk as a result of the causes relied upon by Lloyd's in denying coverage under the 2004 Policy.

30. Despite having been provided with the Murray & Associates and Neri reports, Lloyd's has continued to deny coverage under the 2004 Policy for the sinking of the Yacht.

31. By continuing to deny coverage under the 2004 Policy for the sinking of the Yacht despite having been provided with the Murray & Associates and Neri reports, Lloyd's has been guilty of bad faith.

32. By reason of the foregoing, punitive damages should be imposed upon

Lloyd's and plaintiff's should be awarded their attorneys' fees and costs.

WHEREFORE, plaintiffs demand judgment in their favor against Lloyd's as follows:

(a) On their First Cause of Action, declaring that the sinking of the Yacht was a peril covered by the 2004 Policy, that Lloyd's' refusal to indemnify plaintiffs under the 2004 Policy is a breach of that policy and that Lloyd's is obligated to indemnify plaintiffs under the 2004 Policy for the sinking of the Yacht;

(b) On their Second Cause of Action, declaring that the actual value of the Yacht under the 2004 Policy is the insured value of $500,000, that Lloyd's is obligated to indemnify plaintiffs under the 2004 Policy in the amount of $500,000 and awarding compensatory damages in favor of plaintiffs and against Lloyd's in the amount of $500,000 less any deductible, together with consequential damages in an amount to be determined at trial but not less than $500,000;

(c) On their Third Cause of Action, awarding them punitive damages in an amount to be determined at trial but not less than $1,500,000 and their attorneys' fees and costs;

(d) Awarding them interest and the costs and disbursements of this action, including their reasonable attorneys' fees; and

(e) Granting them such other relief as is just and proper.

Dated: New York, New York
       March 5, 2008

                                             LYNCH ROWIN LLP

                                             By: _____
                                                 Marc Rowin (MR 6758)
                                          630 Third Avenue
                                          New York, New York 10017
                                          (212) 682-4001
                                          Attorneys for Plaintiffs Jean Maurice Bergeron and Cavalam Ltd.