UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x

CAVLAM BUSINESS LTD. and JEAN MAURICE
BERGERON,                                                                 08 CV 2225 (JGK)

                           Plaintiffs,

        -against-

CERTAIN UNDERWRITERS AT LLOYD'S,
LONDON,

                           Defendant.

------------------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

This dispute concerns the parties' rights under an insurance policy which is subject to the exclusive jurisdiction of the English courts. In fact, for two years proceedings involving the identical parties and issues have been pending in the High Court in London. Moreover, this dispute has absolutely nothing to do with, nor any connection with, New York.

The Plaintiffs are, respectively, a company organized under the laws of the British Virgin Islands and its sole shareholder, a citizen of France. The defendants ("Underwriters") are insurers based in London. The dispute concerns the sinking of a yacht, owned by the Plaintiffs and registered in the British Virgin Islands, off the coast of Venezuela in 2004. None of the witnesses reside in New York. None of the physical evidence exists in New York. There is simply no connection whatever between this dispute and New York.

The Underwriters respectfully request that the Court decline to exercise jurisdiction and dismiss this matter. Dismissal is proper for three independent reasons. First, under the doctrine

of *forum non conveniens*, this Court has the discretion to dismiss an action where, as here, there is no connection between Plaintiffs' chosen forum and the dispute, there is an adequate alternative forum, and considerations of public and private interests weigh in favor of dismissal. Second, the policy at issue is subject to a forum selection clause, selecting the courts of England as the forum for any dispute arising under the policy. Finally, as a matter of international comity, this Court should abstain from exercising jurisdiction because an action already is pending in England, and the insurance contract at issue is subject to the exclusive jurisdiction of the English courts.[1]

## FACTS

The relevant facts are set forth in full in the accompanying Declarations of Wesley Martin Absolom and Julian Prowse Bosworth and are summarized here. The insurance policy underlying this dispute was underwritten by Underwriting Risk Services Ltd. ("URS"), on behalf of the Underwriter defendants herein. Underwriters consist of six syndicates at Lloyd's of London. URS is located in and conducts its business in London. Syndicate No. 1183, which is managed by an affiliate of URS, is the lead defendant in this action. The other defendants are members of the five syndicates at Lloyd's of London who participated in the risk, all of whom are located in London. Declaration of Wesley Martin Absolom ("Absolom Decl.") ¶¶ 1, 2, and 7.

While Plaintiffs have correctly characterized defendants in the caption of this action as "Certain Underwriters" at Lloyd's of London, Plaintiffs' allegations as to Lloyd's (see Complaint, ¶ 6) are incorrect. Lloyd's of London is an insurance marketplace in which a number of syndicates (including the six syndicates involved in this case) underwrite insurance. The Corporation of Lloyd's provides administrative and oversight services for the syndicates, but it does not underwrite insurance. All of the syndicates involved in this case conduct their business

---

[1] Although not a part of this motion, Underwriters reserve their right to contest personal jurisdiction in this case.

in London, and all activity relating to the placement of the insurance at issue in this case occurred in London.

**a.     Placement Of Insurance On The AMIRA**

On November 6, 2002, URS received a fax from Plaintiffs' insurance broker, International Marine Insurance Services ("IMIS"), located in North Grasonville, Maryland, requesting a quote for insurance on a yacht, the "M/Y AMIRA."  Between November 6, 2002 and November 19, 2002, URS exchanged correspondence with IMIS concerning the quote request.  Ultimately, URS provided a written quotation to insure the AMIRA for $500,000 (a value provided by the Plaintiffs), subject to the insured's warranty that the yacht would leave Caribbean and US waters by July 1, 2003.  Absolom Decl. ¶ 4 and Exhibit B.

Following further correspondence with IMIS, URS sent a revised proposal via facsimile to IMIS on February 6, 2003.  URS then received a fax from IMIS on March 3, 2003 asking for coverage to be bound immediately.  IMIS also confirmed that the premium of $8,210 had been collected, and provided other documents, including a completed Proposal Form, which had been signed by Mr. Bergeron and listed an address for him and Calvam Ltd. in Nassau, Bahamas.  Absolom Decl. ¶ 5 and Exs. C and D.

URS issued a Certificate of Insurance number M/03/08661 for the yacht for the period March 3, 2003 to March 3, 2004 (the "2003 Certificate").  Absolom Decl. ¶ 6 and Exhibit E.

URS placed the risk at Lloyd's pursuant to a binding authority with the manager for Syndicate 1183, which was shared with members of Syndicates Nos. 2001, 2003, 2987, 2020 and 1084 at Lloyd's of London.  Absolom Decl. ¶ 7.

In February and March 2004, URS and IMIS exchanged emails and correspondence concerning renewal of the insurance for the AMIRA.  In its renewal quotation dated February 20,

2004, URS specified that the policy would be subject to the exclusive jurisdiction of the English courts. Absolom Decl. ¶ 8 and Exhibit F.

The insurance of the AMIRA was renewed by Certificate of Insurance number M/04/08661, for the period March 3, 2004 to March 4, 2005 (the "2004 Certificate"). Absolom Decl. ¶ 9 and Exhibit G.

**b.    The Claim**

On December 21, 2004, URS was notified that the AMIRA had sunk on December 18, 2004 at her moorings at the Varadera Del Caribe Yard, Isla de Margarita, Venezuela. Declaration of Julian Prowse Bosworth ("Bosworth Decl.") ¶ 2 and Exhibit A. URS then retained surveyors in Venezuela, in order to determine the cause of the sinking, the extent of the damage, necessary repairs and estimated costs. Bosworth Decl. ¶ 3.

URS also subsequently engaged other surveyors to examine the AMIRA, none of whom are located in New York. (One, now deceased, was located in Florida and the other is located in the United Kingdom.) Bosworth Decl. ¶ 4-7.

The surveyors appointed by Underwriters concluded that the AMIRA had not been maintained in a seaworthy condition, and the insurance claim was therefore denied. Bosworth Decl. ¶ 6. The parties also dispute the value of the AMIRA and consequent amount of the claim. Bosworth Decl. ¶ 8.

Plaintiffs have also retained certain surveyors and consultants, none of whom are located in New York. Bosworth Decl. ¶ 9.

On May 5, 2006, Underwriters commenced an action in the High Court in London against Plaintiffs. In that action, which involves the identical parties and issues, Underwriters seek a declaration that there is no coverage for the sinking of the AMIRA under the 2004 Certificate.

4

On August 17, 2007 Mr. Bergeron filed an acknowledgment of service in the UK proceedings. Since that time, the UK proceedings have essentially been stayed while the parties negotiated with respect to the claim. Bosworth Decl. ¶ 10 and Exhibits B and C.

## ARGUMENT

**I.    This Case Should Be Dismissed Pursuant to the Doctrine of *Forum Non Conveniens***

This case presents a textbook example of an action ripe for dismissal pursuant to the doctrine of *forum non conveniens*. District Courts have considerable discretion to dismiss suits under the doctrine of *forum non conveniens*, which arose from the Supreme Court's recognition of "an unqualified discretion to decline jurisdiction" in foreign admiralty suits. *See Canada Malting Co., Ltd. v. Paterson Steamships, Ltd.*, 285 U.S. 413, 421, 76 L.Ed. 837 (1932) (relied upon in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 504, 91 L.Ed. 1055 (1947)).

This Court, following the factors outlined by the Supreme Court in determining whether an action should be dismissed pursuant to the doctrine of *forum non conveniens*, has described the analysis as a three step one:

> First, the court must determine what deference is owed Plaintiff's choice of forum. Second, the court must determine whether an adequate alternative forum exists. Third, in the event that an adequate alternative forum does exist, the court must balance the public and private interest factors . . .

*Van Der Velde v. Phillip Morris, Inc.*, No. 02-Civ. 783, 2004 WL 48891, at *1 (S.D.N.Y. Jan. 9, 2004) (citing *Gilbert*, 330 U.S. at 507). *See also Pollux Holding Ltd. v. The Chase Manhattan Bank,* 329 F.3d 64, 70 (2d Cir. 2003) (describing *forum non conveniens* analysis as a three step process where the court must determine the degree of deference due, determine whether an adequate alternative forum exists, and apply the *Gilbert* public and private interest factors). Here, each of these factors weighs heavily in favor of dismissal. Plaintiffs' choice of forum

deserves minimal deference, an adequate alternative forum exists, and the public and private interest factors favor the foreign forum.

This case presents facts remarkably similar to those in *Sinochem Int'l Co., Ltd. v. Malaysia Int'l Shipping Corp.*, 127 S.Ct. 1184, 1194 (2007), described by the Supreme Court as a "textbook case for immediate *forum non conveniens* dismissal." In *Sinochem*, the Supreme Court considered a Malaysian shipping company's suit against a Chinese corporation in connection with an event that occurred in Chinese waters. *Id.* at 1188. There, as here, the parties were already engaged in a foreign proceeding to resolve the dispute. The Court observed that admiralty suits between foreigners over events that occurred in foreign waters provide a "textbook" scenario for forum non conveniens dismissal. *See id.* at 1194. This case cannot be distinguished from *Sinochem*.

### a. Plaintiffs' Choice of Forum Deserves Minimal Deference

In considering the weight afforded to the Plaintiff's choice of forum, the Second Circuit has adopted a "sliding scale" approach, so that "the degree of deference given to a Plaintiff's forum choice varies with the circumstances," in that a 'Plaintiff's choice of forum is generally entitled to great deference when the Plaintiff has sued in the Plaintiff's home forum," as opposed to a foreign Plaintiff suing in the United States, which is entitled to "less deference." *Iragorri v. United Technologies Corp.*, 274 F.3d 65, 71 (2d Cir. 2001); *see also Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981) (choice of a United States forum by foreign Plaintiff is entitled to less deference). This case involves the latter scenario - foreign Plaintiffs suing in the United States - and the Plaintiffs' choice of forum is therefore entitled to "less deference."

Moreover, when applying this sliding scale, the court should consider whether the Plaintiff or the lawsuit has a "bona fide" connection to the Plaintiff's chosen forum. *See Iragorri*, 274

F.3d at 72. "[F]actors that argue against *forum non conveniens* dismissal include the convenience of Plaintiff's residence in relation to the chosen forum, the availability of witnesses or evidence to the forum district, the defendant's amenability to suit in the forum district, the availability of appropriate legal assistance, and other reasons relating to convenience or expense." *Id.* However:

> [T]he more it appears that the Plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons—such as attempts to win a tactical advantage resulting from local laws that favor the Plaintiff's case, the habitual generosity of juries in the United States or in the forum district, the Plaintiff's popularity or the defendant's unpopularity in the region, or the inconvenience and expense to the defendant resulting from litigation in that forum -- the less deference the Plaintiff's choice commands and, consequently, the easier it becomes for the defendant to succeed on a *forum non conveniens* motion by showing that convenience would be better served by litigating in another country's courts.

*Id*.

Application of these considerations to the facts of this case strongly favors dismissal. Here, foreign Plaintiffs have chosen to sue foreign defendants in New York, and Plaintiffs' choice of forum is therefore entitled to little deference. Moreover, there is no "bona fide" connection between this lawsuit and New York: Mr. Bergeron resides in France (which is closer to the alternative forum in London), and Cavlam Business, Ltd. is a corporation organized under the laws of the British Virgin Islands. The yacht, which is the subject matter of the insurance in dispute, sank in Venezuelan waters, and it has remained in Venezuela. Furthermore, none of the witnesses or documents are located in New York. While Plaintiffs allege that Lloyd's has an office in New York; even if that were true, which it is not[2], the Underwriters' presence in New York would not shield Plaintiffs from *forum non conveniens* dismissal, particularly where any New York office had no involvement whatever with the insurance policy at issue in this case. *See, e.g., Varnelo v. Eastwind Transport, Ltd.*, No. 02 Civ. 2084, 2003 WL 230741, at *22

---

[2] As set forth above at pages 2-3, Plaintiffs may be confusing the Corporation of Lloyd's with the syndicates (underwriters) at Lloyd's.

7

(S.D.N.Y. Feb. 3, 2003) (location of defendants' offices in New York is not a significant factor in *forum non conveniens* analysis); *Potomac Capital Inv. Corp. v. KLM*, 97 Civ. 8141, 1998 WL 92416, at *10 (S.D.N.Y. Mar. 4, 1998) ("The fact that [defendant] . . . has its American headquarters here is of no consequence [to a *forum non conveniens* decision], since the tort and the resulting damage both occurred elsewhere.").

Additionally, there are no reasons "relating to convenience or expense" that suggest New York is the more appropriate forum when compared to London. Rather, the Southern District of New York appears to have been selected entirely for forum-shopping reasons, such as "to win a tactical advantage resulting from local laws" and the "inconvenience and expense to the defendant." Indeed, convenience of all parties would be better served by litigating this dispute in London, as the parties contractually agreed to do, and where litigation has been pending for two years.

      **b.**    **England, Where This Suit Has Been Pending For Two Years, Provides An Adequate Alternative Forum**

Next, the court must consider whether an adequate alternative forum exists. Here, the British courts provide the parties with an adequate alternative forum. "An alternative forum is adequate if: (1) the defendants are subject to service of process there; and (2) the forum permits 'litigation of the subject matter of the dispute.'" *Alfadda v. Fenn*, 159 F.3d 41, 45 (2d Cir. 1998). Courts in the Second Circuit repeatedly have held that British courts provide an adequate alternative forum for disputes involving British entities and citizens. *See, e.g., Murray v. British Broadcasting Corp.,* 81 F.3d 287, 292 (2d Cir. 1996) (having to sue a British defendant in England does not present one of those "rare circumstances" where "the remedy offered by the

8

other forum is clearly unsatisfactory"); *Van Der Velde,* 2004 WL 48891, at *2-3 (England is an adequate alternative forum for British citizen's suit against American cigarette manufacturers).[3]

Furthermore, the present suit currently is pending in England. Under these circumstances, the Plaintiffs "face[] no genuine risk that the more convenient forum will not take up the case," and there is little reason for an American court to retain jurisdiction. *See Sinochem Int'l Co., Ltd. v. Malaysia Int'l Shipping Corp.*, 127 S. Ct. 1184, 1193 (2007) (observing, with approval, that proceedings to resolve parties' admiralty dispute already had begun in China).

### c.  Public And Private Interests Favor Dismissal

The third step in a *forum non conveniens* analysis is to examine the public and private interests. Those factors overwhelmingly point to dismissal.

In the present case, all of the public interest factors favor dismissal. "The public interests include: (1) having local disputes settled locally; (2) avoiding problems of applying foreign law; and (3) avoiding burdening [triers of fact] with cases that have no impact on their community." *Alfadda*, 159 F.3d at 46. This dispute certainly is not local to New York. The focal point of this lawsuit is either London, where the insurance contract was made, or Venezuela, where the loss occurred. Of those two potential forums, London has the greater interest because this case involves insurance underwritten in London. *See, e.g., id.* (in dispute between a Netherlands Antilles corporation and Saudi Arabian shareholders over the conduct of a French bank, France had a far greater interest than the United States); *see also Saab v. Citibank, N.A.*, 00 Civ. 6784, 2001 WL 1382577, at *5 (S.D.N.Y. Nov. 7, 2001) (*forum non conveniens* motion granted where

---

[3] That American and British law might provide different remedies is not a factor weighing against dismissal. *See, e.g., Alfadda v. Fenn,* 159 F.3d 41, 45 (2d Cir. 1998) (differences between American law and the law of the foreign forum should not be given substantial weight); *Capital Currency Exch. v. National Westminster Bank PLC,* 155 F.3d 603, 610 (2d Cir. 1998) (unavailability of treble damages does not render a foreign forum inadequate); *Varnelo*, 2003 WL 230741, at *9 (Plaintiff conceded to forum-shopping by stating that her recovery in Russia would be a small fraction of her recovery in New York).

9

defendant's headquarters were in New York, but the other major players were Lebanese businessmen and a Saudi Arabian bank, and acts occurred in Europe and the Middle East).

Next, this case presents the Court with the "problems of applying foreign law." Under the *Gilbert* factors, courts need not "engage in a complex conflicts of law inquiry" when considering whether foreign law applies—the mere "likelihood that foreign law will apply weighs against retention of the action." *PT United Can Co. v. Crown Cork & Seal Co.,* 96 Civ. 3669, 1997 WL 31194, at *10 (S.D.N.Y. Jan. 28, 1997), *aff'd* 138 F.3d 65 (2d Cir. 1998); *Ioannides v. Marika Mar. Corp.,* 928 F. Supp. 374, 379 (S.D.N.Y. 1996). Here, English law will apply to the substantive issues in this case because England has the most contacts with this dispute: the insurance was placed and underwritten in England; the insurance is subject to the jurisdiction of the courts of England; and the Underwriters are located there. *See State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld,* 921 F.2d 409, 414 (2d Cir. 1990) (holding that Connecticut's direct action statute did not apply where there were insufficient contacts with Connecticut to warrant application of Connecticut law). As the Supreme Court noted in *Piper*, the doctrine of *forum non conveniens* "is designed in part to help courts avoid conducting complex exercises in comparative law." *Piper Aircraft*, 454 U.S. at 251. Because this case is governed by English law, this factor also favors dismissal.

Finally, because this case has no connection to New York, it would be unfair to burden a New York court and American taxpayers with its resolution. As the Supreme Court noted in *Piper,* "the American courts, which are already extremely attractive to foreign Plaintiffs, would become even more attractive" if they adjudicated foreign litigation. *Id.* at 252. "The flow of litigation into the United States would increase and further congest already crowded courts." *Id.*; *see also Cruz v. Maritime Co. of Philippines,* 549 F. Supp. 285, 290 (S.D.N.Y. 1982) ("Our

10

courts' ability to discharge their obligations to give speedy justice in matters properly before them would be substantially impaired to the prejudice of all if they took it upon themselves also to resolve the disputes of the rest of the world.").

The "private interests" also favor dismissal. Those interests include: "(1) ease of access to evidence; (2) the cost for witnesses to attend trial; (3) the availability of compulsory process; and (4) other factors that might shorten trial or make it less expensive." *Alfadda*, 159 F.3d at 46. None of the physical and documentary evidence is located in New York. None of the witnesses are located in New York.[4] "[W]hen the greater number and more relevant witnesses are located in a foreign forum, common sense suggests that the litigation proceed in that forum." *Nippon Fire & Marine Ins. Co., Ltd. v. M.V. Egasco Star,* 899 F. Supp. 164, 169 (1995). While there may be no perfect forum that is convenient for all the witnesses, the private interests favor London over New York.

## II. This Case Should Be Dismissed Because the Parties Agreed to the Jurisdiction of the English Courts.

URS's February 20, 2004 renewal quotation, which sets forth the terms of the insurance contract between the parties, specified: "This insurance contract shall be subject to the exclusive jurisdiction of the English courts, except as may be expressly provided herein to the contrary." (Absolom Decl. Exhibit F) URS's November 19, 2002 and February 2, 2003 quotations also contained British forum selection clauses.[5]

---

[4] Although Plaintiffs' insurance broker, IMIS, is a United States company, it is located approximately 200 miles away, in North Grasonville, Maryland. One of Plaintiff's expert witnesses is in Florida, but Florida is not particularly convenient to New York, and even if Florida were convenient, an expert witness's location is entitled to little weight in a court's *forum non conveniens* analysis. *Varnelo,* 2003 WL 230741, at *20 n.40. Other witnesses are located in Venezuela and Italy, where this court has no subpoena power.

[5] The clauses in the earlier quotations had slightly different wording but with the same effect; they stated "[t]his Quotation shall be subject to the exclusive jurisdiction of the English courts, except as may be expressly provided herein to the contrary."

Forum selection clauses in international contracts are routinely enforced in federal court. *See, e.g., M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 32 L.Ed.2d 513 (1972). In *Bremen*, the Supreme Court considered whether to enforce a clause that selected the English courts to hear disputes arising between a United States corporation and the German tug-boat operator it hired to tow an oil rig from the Gulf Coast to Europe. While in the Gulf of Mexico, the tug encountered a severe storm and the rig sustained extensive damage. The German tug towed the damaged rig to the nearest safe harbor, which happened to be Tampa, Florida, and the rig's owner filed an admiralty suit in the Tampa District Court. *Id.* at 2-4. The District Court refused to enforce the parties' forum selection clause and the Court of Appeals affirmed, but the Supreme Court reversed because "far too little weight and effect were given to the forum clause in resolving this controversy." *Id.* at 9. The Supreme Court then articulated the standard that District Courts should apply when deciding whether to enforce forum selection clauses in international agreements. It held:

> [I]n the light of present-day commercial realities and expanding international trade, we conclude that the forum clause should control *absent a strong showing that it should be set aside*. . . The correct approach would have been to enforce the forum clause specifically unless [the Plaintiff] could clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching.

*Id.* at 15 (emphasis added); *see also Roby v. Corporation of Lloyds,* 996 F.2d 1353 (2d Cir. 1993) (American investors in Lloyd's insurance syndicates had to abide by contract clauses that bound them to arbitrate in England because "forum selection and choice of law clauses are presumptively valid where the underlying transaction is fundamentally international in character"). Plaintiffs cannot legitimately argue that the choice of an English forum is unreasonable or unjust where they purchased an insurance policy from English insurers – a

12

transaction fundamentally international in character—or that the forum selection clause is invalid because of fraud or overreaching.

More recently, in *Phillips v. Audio Active Limited,* 494 F.3d 378, 383-84 (2d Cir. 2007), the Second Circuit described a four-part test to guide a District Court's dismissal of a claim in light of a foreign forum selection clause. First, the court should determine "whether the clause was reasonably communicated to the party resisting enforcement. . . . The second step requires us to classify the clause as mandatory or permissive . . . Part three asks whether the claims and parties involved in the suit are subject to the forum selection clause." *Id.* at 383. If the answers to these inquiries disfavor the "resisting party's" position, the clause is presumptively valid under *Bremen*, and the party resisting its enforcement must make a strong showing that enforcement would be unreasonable, unjust, or that the clause is the product of fraud or overreaching. *Id.* at 383-84.

The clause at issue in this case is clearly enforceable under the standards articulated above. The clause was plainly communicated to the insureds, as it appeared in bold type in all three of the quotations that URS sent to Plaintiffs' insurance broker, IMIS. Insurance brokers are agents of the policyholders they represent. *Evvtex Co., Inc. v. Hartley Cooper Assocs. Ltd.*, 911 F.Supp. 732, 738 (S.D.N.Y. 1996). Accordingly, it is immaterial whether IMIS actually forwarded URS's quotations to the Plaintiffs. Under elementary principles of agency law, IMIS's knowledge of the forum selection clause is imputed to the insureds. *E.g., Skiff-Murray v. Murray,* 17 A.D.3d 807, 809-810, 793 N.Y.S.2d 243 (App. Div. 3rd Dep't 2005) ("The general rule is that knowledge acquired by an agent acting within the scope of his agency is imputed to his principal and the latter is bound by such knowledge although the information is never actually communicated to it"). *See also McGarr v. Guardian Life Ins. Co. of America*, 19 A.D.3d 254,

256, 799 N.Y.S.2d 19 (App. Div. 1st Dep't 2005) (where broker obtained the incorrect insurance policy, insured should have discovered broker's error and exercised his right to cancel the policy within ten days of receipt; insured is presumed to have read and understood his policy).

Next, this forum selection clause is, by its plain terms, mandatory. As previously stated, the clause provides "This insurance contract *shall* be subject to the *exclusive* jurisdiction of the English courts . . ." (emphasis added). This undoubtedly is a mandatory clause. *Cf. Finova Capital Corp. v. Ryan Helicopters U.S.A.,* 180 F.3d 896, 897 (7th Cir. 1999) (analyzing a forum selection clause that let the parties choose between forums in St. Lucia and Illinois).

Finally, "the claims and parties involved in the suit are subject to the forum selection clause" because they all pertain to claims under the insurance contract. Moreover, under English law, which governs this dispute (and under U.S. law), Plaintiffs accepted the forum selection clause when their broker accepted URS's quotation and confirmed payment of the premium. *See, e.g.*, *Trade & Industry Corp. v. Euro Brokers Investment Corp.*, 222 A.D.2d 364, 368, 635 N.Y.S.2d 227 (App. Div. 1st Dep't 1995) (it is elementary contract law that an offeree must accept the terms extended to bind the offeror, otherwise he has conditionally accepted the offer which operates as a rejection).

URS communicated the forum selection clause to Plaintiffs through their broker, the clause is mandatory and not permissive, and it covers these parties and claims. Thus, the clause presumptively is valid, and Plaintiffs cannot meet their burden of overturning this presumption. As the Supreme Court stated in *Bremen*, there are no exceptional circumstances such as unfairness, fraud or overreaching when the "choice of [a] forum was made in an arm's-length negotiation by experienced and sophisticated businessmen . . . [A]bsent some compelling and countervailing reason it should be honored by the parties and enforced by the courts." *M/S*

*Bremen*, 407 U.S. at 12. As in *Bremen,* sophisticated parties negotiated the AMIRA insurance policy at arms-length. Through their broker, IMIS, Plaintiffs negotiated a key aspect of the original insurance policy. Specifically, URS provided a written quotation, dated November 19, 2002, that was conditioned upon Mr. Bergeron's promise to ship the AMIRA to France for the 2003 hurricane season. (Absolom Decl. ¶ 4.) After IMIS received this quotation, Mr. Bergeron decided that he would prefer to take the AMIRA to Trinidad to avoid storm exposure. (*id.* ¶ 5.) IMIS expressed Mr. Bergeron's wishes to URS, and URS assented to this request when it sent IMIS a revised proposal based on this new information. *Id.* If Mr. Bergeron could negotiate with URS over the yacht's location—which bears directly on the degree of risk—he presumably could have negotiated over the choice of forum, which appeared in both the November 19, 2002 quotation and the renewal. Because the AMIRA policy was not secured by fraud, overreaching, or other unfair circumstances, the court should honor the parties' forum selection clause by dismissing Plaintiffs' suit.

**III.    This Court Should Abstain From Exercising Jurisdiction As A Matter of International Comity.**

When parallel proceedings exist in a foreign forum, a federal court has discretion to dismiss the case before it pursuant to principles of international comity. *See, e.g., Royal and Sun Alliance Ins. Co. of Canada v. Century Int'l Arms, Inc.,* 466 F.3d 88, 92 (2d Cir. 2006). International comity is "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience." *Id.* (citing *Hilton v. Guyot,* 159 U.S. 113, 163-64, 40 L.Ed. 95 (1895)). International comity abstention is appropriate when "exceptional circumstances" justify a court's surrender of its usual obligation to assert jurisdiction. *Id.* at 93. This case presents such exceptional circumstances.

15

When, as here, parallel proceedings already are underway in a foreign court, "a district court should be guided by the principles upon which international comity is based: the proper respect for litigation in and the courts of a sovereign nation, fairness to litigants, and judicial efficiency." *Id.* at 94. Comity abstention requires a case-by-case analysis that considers the "totality of the circumstances," including, but not limited to, the following factors:

> the similarity of the parties, the similarity of the issues, the order in which the actions were filed, the adequacy of the alternate forum, the potential prejudice to either party, the convenience of the parties, the connection between the litigation and the United States, and the connection between the litigation and the foreign jurisdiction.

*Id.* at 94. Each of these factors weighs in favor of dismissal. Another important factor, which weighs heavily in favor of dismissal in the present case, is whether the parties previously chose the forum were parallel proceedings exist. Put simply, the existence of a forum selection clause that chooses the alternate forum is another "exceptional circumstance" that justifies dismissal. As the Second Circuit observed in *Roby,* "[i]nternational comity dictates that American courts enforce [forum selection and choice of law] clauses out of respect for the integrity and competence of foreign tribunals." *Roby,* 996 F.2d at 1363; *see also Finova Capital Corp.*, 180 F.3d at 900 n.4 (observing that the courts in St. Lucia must be equipped to handle the parties' case, where they agreed, in their contract, that St. Lucian courts would have jurisdiction).

Under the factors identified in *Royal and Sun Alliance Ins. Co. of Canada* and *Roby,* this case presents "exceptional circumstances" that justify dismissal. The same parties and the same issues are the subject of proceedings commenced by Underwriters in London two years ago. As noted above, courts in this circuit repeatedly have found that the British courts are an adequate forum, and those courts are more convenient for both Plaintiffs and the Underwriters. Furthermore, dismissal of this case would not prejudice the Plaintiffs. Unlike the Plaintiff in

16

*Royal and Sun Alliance*, these Plaintiffs do not face the possibility that British courts will refuse to litigate the subject of their dispute, as proceedings are currently pending in the High Court in London. *See Royal and Sun Alliance Ins. Co. of Canada*, 466 F.3d at 95. Finally, the proceedings in London began two years ago. For all of these reasons, this case presents this Court with exceptional circumstances that warrant dismissal of Plaintiffs' claim based on principles of international comity.

## CONCLUSION

For the foregoing reasons, defendant Underwriters' motion to dismiss should be granted.

Respectfully submitted,

Dated:  New York, New York         /s/ Joseph G. Grasso
        May 29, 2008                Joseph G. Grasso
                                    Wiggin and Dana, LLP
                                    450 Lexington Avenue
                                    Suite 3800
                                    New York, NY  10017
                                    (212) 490-1700 phone
                                    (212) 490-0536 fax

                                    Attorneys for Defendants