UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

CAVLAM BUSINESS LTD. and JEAN MAURICE
BERGERON,

                      Plaintiffs,

          - against -

CERTAIN UNDERWRITERS AT LLOYD'S,
LONDON,

                    Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

08 CV 2225 (JGK)
ECF Case

PLAINTIFFS' MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS

LYNCH ROWIN LLP
630 Third Avenue
New York, New York 10017
(212) 682-4001
Attorneys for Plaintiffs

TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.    LLOYD'S HAS NOT MET ITS BURDEN
      UNDER FORUM NON CONVENIENS PRINCIPLES . . . . . . . . . . . . . . . . . . . . . . . .3

      A.    Lloyd's Discussion of Forum
            Non Conveniens Was Incomplete . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

      B.    "National Treatment" Requires
            Plaintiffs' Choice Of Forum
            To Be Given More Deference . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

      C.    The Balance of Convenience
            Favors Litigation In New York . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

      D.    All Public and Private Interest Factors
            Favor Litigation In New York . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

II.   THE FORUM SELECTION CLAUSE
      IN THE RENEWAL QUOTATION
      IS NOT EFFECTIVE OR BINDING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

      A.    The Forum Selection Clause
            Is Not Effective By Its Terms . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

      B.    The Forum Selection Clause
            Cannot Be Enforced Because
            It Violates English Public Policy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

III.  INTERNATIONAL COMITY DOES
      NOT REQUIRE DISMISSAL IN
      FAVOR OF THE LONDON ACTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

IV.   IF THE MOTION IS GRANTED,
      CONDITIONS SHOULD BE IMPOSED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

TABLE OF AUTHORITIES

*CASES*

BlackRock, Inc. v. Schroders PLC, 2007 WL 1573933 (S.D.N.Y. 2007) . . . . . . . . . . . . . . . . . .7

Blanco v. Banco Indus. de Venezuela, S.A., 997 F.2d 974 (2d Cir. 1993) . . . . . . . . . . . . . . . .5

Calmar S.S. Corp. v. Scott, 345 U.S. 427 (1953) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

Central National-Gottesman, Inc. v. M.V. "Gertrude Oldendorff",
204 F.Supp.2d 675 (S.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

Concesionaria DHM, S.A. v. Int'l Finance Corp.,
307 F.Supp.2d 553 (S.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

DiRienzo v. Philip Services Corp., 294 F.3d 21 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . .4

Estasis Salotti de Colzani Aimo v. RÜWA Polstereimaschinen GmbH,
ECJ Case No.: 24/76 [1976] ECR 1831 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

Finova Capital Corp. v. Ryan Helicopters U.S.A., Inc., 180 F.3d 896 (7th Cir. 1999). . . . . . .21

Galeries Segoura SPRL v. Bonakdarian, ECJ Case No.: 25/76 [1976] ECR 1851 . . . . . . . . . .20

Guidi v. Inter-Continental Hotels Corp., 224 F.3d 142 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . .6

Haywin Textile Products, Inc., v. Int'l Finance Investment,
137 F.Supp.2d 431 (S.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

In re Air Crash Near Nantucket Island, 392 F.Supp.2d 461 (E.D.N.Y. 2005) . . . . . . . . . . . . .21

Iragorri v. United Technologies Corp.,
274 F.3d 65 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3, 4, 5, 6, 7, 10, 11, 14, 22, 23

Jasol Carpet, Inc. v. Patcraft Commercial Carpet, Inc.,
1997 WL 97831 (S.D.N.Y. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

Klonis v. National Bank of Greece S.A., 487 F.Supp.2d 351 (S.D.N.Y. 2006) . . . . . . . . . . . . .3

La Seguridad de Centroamerica S.A. v. M/V Global Mariner,
2002 WL 530979 (S.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

Mastercard Int'l Inc. v. Argencard Sociedad Anonima,
2002 WL 432379 (S.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . .17, 20

New Moon Shipping Co., Ltd. v. MAN B & W Diesel AG,
121 F.3d 24 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

Pollux Holding Ltd. v. The Chase Manhattan Bank, 329 F.3d 64 (2d Cir. 2003) . . . . . . . . . .6

PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc.,
138 F.3d 65 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

Ramirez de Arellano v. Starwood Hotels & Resorts Worldwide, Inc.,
448 F.Supp.2d 520 (S.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 8, 12, 13

Royal & Sun Alliance Ins. Co. of Canada v.
Century Int'l Arms, Inc., 466 F.3d 88 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

Saab v. Citibank, N.A., 2001 WL 1382577 (S.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . .13

Sinochem Int'l Co., Ltd. v. Malaysia Int'l Shipping Corp.,
___ U.S. ___, 127 S.Ct. 1184 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

Sipowicz v. Wimble, 370 F.Supp. 442 (S.D.N.Y. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

The Northwestern Mutual Ins. Co. v. Linard, 498 F.2d 556 (2d Cir. 1974) . . . . . . . . . . . . . .14

U.S. Fidelity & Guaranty Co. v. Braspetro Oil Services Co.,
1999 WL 307666 (S.D.N.Y. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . .23

iv

*TREATIES*

Convention of Establishment, Protocol and Declaration,
November 25, 1959, U.S.-Fr., 11 U.S.T. 2398 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

Convention on Jurisdiction and the Enforcement of
Judgments in Civil and Commercial Matters (Brussels),
September 27, 1968, 12 U.N.T.S. 153. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18, 19

Hague Convention on the Taking of Evidence Abroad,
October 7, 1972, 23 U.S.T. 2555 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8, 11

*STATUTES*

28 U.S.C. §1404(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

*RULES*

Fed. R. Civ. P. 44.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

*REGULATIONS*

Council Regulation (EC) No.: 44/2001 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

Unfair Terms in Consumer Contracts Regulations 1999 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

INTRODUCTION

Plaintiffs Cavlam Business Ltd. and Jean Maurice Bergeron respectfully submit this memorandum in opposition to the forum non conveniens motion filed by defendant Certain Underwriters at Lloyd's, London.

This declaratory judgment action is based upon a policy of marine insurance and is conceded to be within this Court's admiralty jurisdiction. The complaint (Rowin Opp. Aff. Exh. A) alleges that due to Lloyd's disclaimer of coverage for the sinking of plaintiffs' yacht, the "Amira," Lloyd's is liable for breach of contract and bad faith. Two fact-based questions are raised:

First, was the sinking of the "Amira" in Venezuela a hazard covered by the Policy, as plaintiffs contend, or was it caused by a lack of due care on the part of plaintiffs and thus excepted from the Policy, as Lloyd's contends? To answer this question, the trier of fact will be required to determine whether the small amount of leakage discovered at the port propeller shaft packing gland and port and starboard rudder shaft packing glands could have sunk the vessel in a short period of time. The fact witnesses on this point are all non-parties and all reside in Venezuela or other parts of the Caribbean. The determination of this issue will also involve a battle of the parties' experts.

Second, was the "Amira," which Lloyd's insured for a total of $510,000, actually worth only $325,000, as Lloyd's now contends? The resolution of this issue will depend in large part on the testimony of a Ft. Lauderdale, Florida marine surveyor who inspected and

appraised the vessel in 2000. His valuation of the vessel at $550,000 was the basis for the insured value of the vessel in the policy.

These questions show that the parties' dispute has nothing to do with England. Indeed, when all of the facts are analyzed in light of the controlling legal authorities, Lloyd's arguments for dismissing this action in favor of litigation in London fall apart:

- Under the terms of a 1959 treaty between the United States and France, Bergeron is entitled to the same consideration with respect to the forum non conveniens "sliding scale" as an American would be. Since, with the sole exception of Lloyd's itself, there is no connection between England and the parties' dispute, all of the factors to be considered favor litigation in this district, which will be more convenient to obtaining evidence than litigation in Europe.

- The forum selection clause in the unsigned Renewal Quotation form is not dispositive here because it did not become effective and because, as a matter of English and European Union law, it is not enforceable.

- International comity does not require dismissal of this action, since absent exceptional circumstances American courts routinely permit lawsuits to proceed in this country even when there is another action pending abroad. Because the action commenced by Lloyd's in London has barely begun, there

2

is no reason to favor the English action at the expense of the instant suit.

## ARGUMENT

I.   LLOYD'S HAS NOT MET ITS BURDEN
     UNDER FORUM NON CONVENIENS PRINCIPLES

The ultimate purpose of the forum non conveniens tests laid out in Iragorri v. United Technologies Corp., 274 F.3d 65, 71-72 (2d Cir. 2001), is to determine whether the plaintiff was engaging in forum shopping when it chose to sue in the United States.   Klonis v. National Bank of Greece S.A., 487 F.Supp.2d 351, 357 (S.D.N.Y. 2006); Concesionaria DHM, S.A. v. Int'l Finance Corp., 307 F.Supp.2d 553, 562 (S.D.N.Y. 2004).

Here, the Southern District of New York was chosen because Lloyd's is present and thus amenable to suit here and this court is far more convenient for Bergeron, who resides in the Bahamas, than England would be.

In fact, it is Lloyd's which is forum shopping by trying to bring this dispute before its "home court" even though the sinking of the "Amira" has nothing to do with England. This attempt should fail, because Lloyd's has not met its burden of demonstrating that plaintiffs' forum choice should be disturbed.

A.   Lloyd's Discussion of Forum
     Non Conveniens Was Incomplete

Lloyd's discussion of the law of forum non conveniens ignored crucial principles which must be taken into account in deciding this motion.

3

First, it is indisputable that as the moving party, Lloyd's bears the burden of demonstrating that each of the Iragorri factors tilts strongly in its favor. PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc., 138 F.3d 65, 74 (2d Cir. 1998); Ramirez de Arellano v. Starwood Hotels & Resorts Worldwide, Inc., 448 F.Supp.2d 520, 525 (S.D.N.Y. 2006).

Next, because a plaintiff's choice of forum is given deference and should not be disturbed unless the appropriate factors strongly balance in defendant's favor, a court considering a forum non conveniens motion "should begin with the assumption that the plaintiff's choice of forum will stand unless the defendant meets [its] burden . . . ." Iragorri, 274 F.3d at 71. Indeed, a plaintiff should not be deprived of its choice of forum unless the defendant makes a clear showing "that a trial in the United States would be so oppressive and vexatious to [it] as to be out of all proportion to plaintiffs' convenience." DiRienzo v. Philip Services Corp., 294 F.3d 21, 30 (2d Cir. 2002).

In addition, the Second Circuit has reminded the district courts that a defendant's motion itself may be nothing more than forum shopping:

> Courts should be mindful that, just as plaintiffs sometimes choose a forum for forum-shopping reasons, defendants also may move for dismissal under the doctrine of *forum non conveniens* not because of genuine concern with convenience but because of similar forum-shopping reasons. District courts should therefore arm themselves with an appropriate degree of skepticism in assessing whether the defendant has demonstrated genuine inconvenience and a clear preferability of the foreign forum.

4

Iragorri, 274 F.3d at 75

Finally, the Iragorri court noted that on a forum non conveniens motion the district court "should focus on the precise issues that are likely to be actually tried, taking into consideration the convenience of the parties and the availability of witnesses and the evidence needed for the trial of these issues." Id. at 74. The fact-specific nature of the inquiry means that, despite the Supreme Court's dictum in Sinochem Int'l Co., Ltd. v. Malaysia Int'l Shipping Corp., __ U.S. __, 127 S.Ct. 1184 (2007), there cannot really be a "textbook case" for forum non conveniens dismissal.[1]

      B.    "National Treatment" Requires
               Plaintiffs' Choice Of Forum
               To Be Given More Deference

Although the forum choice of a foreign plaintiff is ordinarily accorded "less deference" on the Iragorri "sliding scale," here Bergeron stands in a better position due to the "national treatment" – access to courts on the same basis as American citizens – which the United States has granted to French citizens by treaty.

As the Second Circuit explained in Blanco v. Banco Indus. de Venezuela, S.A., 997 F.2d 974, 981 (2d Cir. 1993),

> [W]hen a treaty with a foreign nation accords its nationals
> access to our courts equivalent to that provided American

---

[1]    The only question before the court in Sinochem was whether the lower court had to decide the issue of its own jurisdiction before ruling on a forum non conveniens motion; it was held that it did not. 127 S.Ct. at 1194.

> citizens, identical forum non conveniens standards must be
> applied to such nationals by American courts.

See also Pollux Holding Ltd. v. The Chase Manhattan Bank, 329 F.3d 64, 72-73 (2d Cir. 2003).

Here, Bergeron is entitled to the benefits accorded by the Convention of Establishment, Protocol and Declaration, November 25, 1959, U.S.-Fr., 11 U.S.T. 2398 (Rowin Opp. Aff. Exh. B), which provides in Article III that citizens of one nation are "accorded national treatment with respect to access to the courts of justice" of the other nation and defines "national treatment" as treatment "no less favorable than the treatment accorded" a nation's own citizens. (Art. XIV(i))[2]

Among other things, Bergeron is entitled to the benefit of the rule stating that in the case of an American citizen suing a foreign citizen, the American's "home forum" is considered to be the United States as a whole, rather than any one judicial district. Guidi v. Inter-Continental Hotels Corp., 224 F.3d 142, 146 (2d Cir. 2000).

Since Bergeron's choice of forum is entitled to greater deference than if national treatment were not applicable, Lloyd's is required to make a stronger showing of

---

[2]    Since Bergeron does not reside in the United States, this would appear to mean the slightly less deference accorded to the forum choice of an expatriate American citizen. Pollux Holding, 329 F.3d at 73; Iragorri, 274 F.3d at 73 n.5.

inconvenience in order to prevail on this motion.[3] Iragorri, 274 F.3d at 74. That showing has not been made.

C.    The Balance of Convenience
      Favors Litigation In New York

Even if national treatment is not applicable here and plaintiffs' forum choice is given lesser deference, New York is not an inconvenient forum and this action should not be dismissed.

Factors to be considered with respect to the degree of deference given to plaintiffs' choice of forum are the convenience of the plaintiff's residence to the forum, the availability of witnesses or evidence in the district, whether the defendant is amenable to suit in the district, the availability of legal assistance and other reasons relating to cost and convenience. Iragorri, 274 F.3d at 72.

Here, those considerations argue against forum non conveniens dismissal.

While Bergeron does not reside in the district, his permanent residence in the

---

[3]    National treatment is not available to Cavlam, a British Virgin Islands corporation; however, Bergeron is the real party in interest here, since Cavlam is simply a non-operating corporation which owns the "Amira," used by Bergeron for his own personal pleasure. (Bergeron Decl. ¶¶4, 6) BlackRock, Inc. v. Schroders PLC, 2007 WL 1573933 (S.D.N.Y. 2007). Even Lloyd's has recognized the importance of Bergeron's involvement with the yacht and its sinking, since he is a named insured on the policy and Lloyd's named him as a defendant in the London action. (Rowin Opp. Aff. Exh. C) Indeed, Bergeron is the only defendant who has been served with process in that action. (Berkin Decl. ¶2) If his status as a party is to be disregarded here, it would have to be disregarded in the English action also, which would result in there being no party defendant served with process there.

Bahamas (not France) is far closer to New York and thus more convenient than London.[4] (Bergeron Decl. ¶2)  See Ramirez de Arellano, 448 F.Supp.2d at 526 (plaintiff's residence in Puerto Rico, being closer to New York than to Spain, weighed in favor of New York forum).

Most fact witnesses with knowledge of the sinking of the "Amira" reside in Venezuela or other parts of the Caribbean.  These include Jacky Genard (operations manager of the shipyard where the vessel sank), Randy Marin (shipyard employee), Eulalio Antonio Velasquez (shipyard employee), Marcelo Bieder (shipyard employee), Willy Astudillo and Marco Gamez (Venezuela National Guard members who inspected the "Amira" upon its arrival in Isla de Margarita) and Raymond Denoon and Randy Whittaker ("Amira" crew members who reside in Trinidad & Tobago).[5]  While the deposition testimony of these witnesses would have to be procured by means of the Hague Convention on the Taking of Evidence Abroad, October 7, 1972, 23 U.S.T. 2555 (to which the United States, Venezuela and the United Kingdom are signatories), no matter where this action proceeds, the simple logistical fact is that Venezuela is closer to New York than it is to London, making the taking of testimony easier and less expensive in this action as

---

[4]    All of Lloyd's documents relating to the policy list Bergeron's address as "PO Box 6174, Nassau, Bahamas."

[5]    Philippe Phillipart, owner of the shipyard, may now reside in Canada. (Bergeron Decl. ¶15)

opposed to the London case.  (Bergeron Decl. ¶¶11-21, 23)

Other fact witnesses are in the United States, not England.  Employees of International Marine Insurance Service ("IMIS"), the broker which procured the insurance policy, are located in Maryland, where IMIS has its place of business.  Malcolm J. Elliott of Florida Nautical Surveyors, Inc., Ft. Lauderdale, conducted a survey of the "Amira" in August 2000, which valued the vessel at $550,000 and was the basis of the policy valuation of $510,000.  His testimony will be relevant because, in addition to disputing the cause of the sinking, Lloyd's contends that the "Amira"'s value was only $325,000.[6]  If the litigation remains in New York, the depositions of these American witnesses will be more easily taken, not least of all because their testimony can be compelled under the Federal Rules of Civil Procedure.  (Golden Decl. ¶¶1-2)

The insurance policy at bar covered the use of the "Amira" in the Caribbean, valued the yacht in United States dollars and contained clauses tailored to the United States market.[7]  The "Amira" was never sailed anywhere but the waters around Florida and the

---

[6]     See Bosworth Decl. ¶8: "The parties also dispute the value of the AMIRA and consequent amount of the claim."  See also Rowin Opp. Aff. Exh. E.

[7]     Both policies issued by Lloyd's, covering 2003-2004 and 2004-2005, described the "Navigation Limits" as "US Atlantic Coast, Bahamas and Caribbean Waters 9-19 degrees North by 58-68 degrees West."  One of the "Conditions" was "American Yacht Form 77 (P)."  The "Protection and Indemnity Insurance" contained a provision warranting the endorsement as being free from any claim under the "Federal 'Longshoremen's and Harbor Workers' Compensation Act.'"

Bahamas and the southern Caribbean Sea. (Bergeron Decl. Exh. C; Golden Decl. ¶7)

Lloyd's is amenable to service in this district, which the Second Circuit has held is a critical factor in evaluating a plaintiff's choice of forum. Iragorri, 247 F.3d at 72-3. Lloyd's has an office for the transaction of business at 25 West 53rd Street, Manhattan, issues insurance policies within New York and otherwise does business here.[8]  According to Lloyd's website, each of Lloyd's international offices, including its New York City office

> provides a range of services to support the Lloyd's market in conducting business in a country.  Principally they offer the following:
>
> o Maintaining strong and close relationships with leading brokers, insurers, local regulatory authorities and insurance industry associations
>
> o Providing Lloyd's businesses with extensive local commercial knowledge and market information, both in person and through the Lloyd's Worldwide section of this website
>
> o Enhancing Lloyd's reputation through strong customer support
>
> o Working to raise Lloyd's profile and assisting with Lloyd's promotional activity.
>
> o Acting as underwriters legal representative in respect

---

[8]    The importance to Lloyd's of its business in the United States and especially New York was highlighted by Lord Levene, Lloyd's chairman, in a speech on June 25, 2008 at Lloyd's New York City Dinner, in which he emphasized "the close nature of the partnership between Lloyd's and New York." (See Rowin Opp. Aff. Exh. D.)

of service of suit

> o Assisting in public authorities tender processes in certain
> EU countries.

(Emphasis added) (Rowin Opp. Aff. Exh. D)

The parties have access to counsel in both New York and London, making this a minimal factor. However, as noted above, obtaining testimony from non-party witnesses will be far more convenient for New York counsel than it would be for English counsel, who are an ocean away.

For all of these reasons, plaintiffs' choice of forum is entitled to significant deference.

### D.    All Public and Private Interest Factors Favor Litigation In New York

After conducting the deference inquiry, the court is required by <u>Iragorri</u> to determine whether an adequate alternative forum exists and, if it does, whether private and public interest factors favor litigation in the plaintiffs' chosen forum or the alternative forum. While plaintiffs do not dispute that England is a potential alternative forum, they believe that the private and public interest factors clearly favor litigation in New York, not London.

The private interest factors focus primarily on ease of access to witnesses and proof and the practical problems of litigation. These practical considerations favor litigation in this district. Bergeron resides in the Bahamas, closer to this district than to London. All

11

non-party witnesses are either in the United States, Venezuela or the Caribbean area. While the Hague Convention will have to be used to obtain their testimony no matter where this dispute is litigated, the witnesses are located closer to this district than they are to London and it can be expected that the cost of obtaining their testimony will be lower for New York counsel. Since the courts are permitted to take into consideration the "relative means" of the parties, <u>Ramirez de Arellano</u>, 448 F.Supp.2d at 529, and Bergeron, a private individual, has far fewer financial resources than Lloyd's, it is clear that the additional costs of procuring evidence for use in England as opposed to use in New York weighs in favor of litigating here.[9] (Bergeron Decl. ¶24)

One critical type of evidence will not be available if this action is dismissed in favor of litigation in London. As noted above, Bergeron and Lloyd's have each retained experts who have inspected the "Amira" to determine the cause of the sinking. Because the experts have reached different conclusions, the dispute will come down to a battle of the experts. (Bergeron Decl. ¶23) The Federal Rules of Civil Procedure will permit a more complete development of the expert case, since both sides can depose the experts retained by the other. This will not be possible in the London action, since English procedure does not allow for expert depositions. (Berkin Decl. ¶8)

One other feature of English law would disadvantage Bergeron. Since he is not a

---

[9]    As noted above, Cavlam is not an operating company and has neither income nor capital of its own. (Bergeron Decl. ¶4)

resident of a European Union nation, Lloyd's may be able to obtain an order from the London court requiring him to post a bond for litigation expenses. Under English law, this could include Lloyd's legal fees (which Bergeron would have to pay if Lloyd's prevailed in the London litigation), so that the amount of a bond could be significant if not prohibitive. (Berkin Decl. ¶7)

The public interest factors also favor litigating in New York.

As to the question of which forum has the most interest in deciding the issues between the parties, the facts of this case render it "a cosmopolitan one, involving parties from different continents . . . ." That means that "[t]his is hardly a local controversy which should be decided by a particular locality." Haywin Textile Products, Inc., v. Int'l Finance Investment, 137 F.Supp.2d 431,437 (S.D.N.Y. 2001).

The other public factors do not support litigation in England. For example, court congestion is no longer a significant concern in this district, Saab v. Citibank, N.A., 2001 WL 1382577 (S.D.N.Y. 2001), and the argument that Southern District jurors should not be burdened with "foreign" litigation has been called "at best a makeweight argument." Ramirez de Arellano, 448 F.Supp.2d at 530.[10]

Assuming arguendo that English law governs here, there are no real impediments, linguistic or analytical, to this Court's ability to construe and apply it.

---

[10]    Admiralty law issues will, of course, be decided by the Court, not a jury.

13

> That English law will be applied in this case does not dictate that the case must be dismissed on *forum non conveniens* grounds. [Citation omitted] This Court is capable of applying that law, and, in fact, is frequently called upon to do so in the exercise of its admiralty jurisdiction.

La Seguridad de Centroamerica S.A. v. M/V Global Mariner, 2002 WL 530979 at *6 (S.D.N.Y. 2002). See also U.S. Fidelity & Guaranty Co. v. Braspetro Oil Services Co., 1999 WL 307666 at *19 (S.D.N.Y. 1999)(because "courts in the Southern District of New York are frequently called upon to decide issues of foreign law," fact that Brazilian law governed did not require forum non conveniens dismissal).

Similarly, the parties' rights and obligations flow from a marine insurance policy (Bergeron Exh. C) whose language dates back centuries, which is used in both American and English policies and which is routinely construed by American courts. See, e.g., Calmar S.S. Corp. v. Scott, 345 U.S. 427, 433 (1953); The Northwestern Mutual Ins. Co. v. Linard, 498 F.2d 556, 560 (2d Cir. 1974)(Lloyd's was a defendant in action citing English cases and construing "standard British hull policy"); Sipowicz v. Wimble, 370 F.Supp. 442 (S.D.N.Y. 1974)(concerning "American Yacht Form" and relying upon American and British cases).

In short, Lloyd's has failed in every respect to meet its heavy burden under Iragorri.

14

II.    THE FORUM SELECTION CLAUSE
       IN THE RENEWAL QUOTATION
       IS NOT EFFECTIVE OR BINDING

Lloyd's argues that dismissal is also mandated by the February 2004 Renewal

Quotation it sent to Bergeron's broker in Maryland, which contained a pre-printed clause

making the Policy subject to English law and requiring all actions regarding the Policy to

be brought in England. This argument is without merit, however, for two reasons. First,

by its terms the forum selection clause never came into effect. Second, as explained in the

opposing declaration of barrister Martyn Berkin, assuming arguendo that English law

applies, this forum selection clause is not enforceable under English law or the law of the

European Union, of which the United Kingdom is now a member.[11]

   A.    The Forum Selection Clause
          Is Not Effective By Its Terms

Absent an evidentiary hearing, plaintiffs need only make "a *prima facie* showing that

the forum selection clause is not a valid part" of the parties' agreement and are "entitled

to have the facts viewed in the light most favorable to [them]," with no disputed fact

resolved against them without a hearing. New Moon Shipping Co., Ltd. v. MAN B & W

Diesel AG, 121 F.3d 24, 29 (2d Cir. 1997).

---

[11]    Pursuant to Fed. R. Civ. P. 44.1, the Court "may consider any relevant
material or source, including testimony" in order to determine a foreign nation's law.
The affidavit of a foreign attorney is a customary means of informing the Court about
foreign law. Central National-Gottesman, Inc. v. M.V. "Gertrude Oldendorff", 204
F.Supp.2d 675, 681 (S.D.N.Y. 2002).

The Renewal Quotation (Golden Decl. Exh. B) is a stand-alone document not incorporated into, or listed as being part of, the Policy. The forum selection clause was never effective, since the Renewal Quotation was never signed by Bergeron or his agent to signify acceptance of the terms, including the choice of law and forum selection clauses contained on the second page.

The front of the Renewal Quotation form contains the following text: "I confirm that there are no material changes to this insurance and that I have read page 2 of this Quotation and accept the terms and conditions as quoted."  A signature line is printed below this language.  Lloyd's, whose printed form the Renewal Quotation was, clearly wanted the insured to sign the form to indicated acceptance of the "terms and conditions," including the forum selection clause.  However, the Renewal Quotation was never signed and the forum selection clause was thus never agreed to. (Bergeron Decl. ¶9; Golden Decl. ¶4) Cf. Jasol Carpet, Inc. v. Patcraft Commercial Carpet, Inc., 1997 WL 97831 (S.D.N.Y. 1997)(forum selection clause on reverse of price list not enforceable where sales contract was reached independently of price list).[12]

---

[12]    The forum selection clauses in the two earlier Quotations (Absolom Exhs. B and C) do not help Lloyd's, because (a) they only covered the Quotation, not the policies, and (b) they did not require the insured's assent by signature.

B.    The Forum Selection Clause
Cannot Be Enforced Because
It Violates English Public Policy

Even if the forum selection clause had been agreed to, Lloyd's may not enforce it

under English law.

While the Supreme Court held in M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1,

15 (1972), that forum selection clauses are generally enforceable, the Court made it clear

that the general policy did not extend to a forum provision which contravened the public

policy of the chosen forum:

> A contractual choice-of-forum clause should be held
> unenforceable if enforcement would contravene a strong public
> policy of the forum in which suit is brought, whether declared
> by statute or by judicial decision.

That is the case here.

Mr. Berkin concludes that the forum selection clause in the Renewal Quotation is not

enforceable in England under several theories.[13]  First, assuming that the Renewal

Quotation is considered part of the Policy and is also considered a consumer contract (since

Bergeron is an individual and the "Amira" was used for personal, not business, activities),

the forum selection clause is an "unfair term" under the Unfair Terms in Consumer

Contracts Regulations 1999 ("Regulations").

---

[13]    The English and European Union materials discussed by Mr. Berkin and
in this section of the brief are collected at Berkin Decl. Exhs. B1 and B2.

Section 5 of the Regulations defines as unfair a contract term "which has not been individually negotiated" "if, contrary to the requirement of good faith, it causes a significant imbalance in the parties' rights and obligations arising under the contract, to the detriment of the consumer." A contract term which "has been drafted in advance" is always regarded as not having been individually negotiated.

Under Section 8 of the Regulations, an unfair term is not enforceable:

> An unfair term in a contract concluded with a consumer by a seller or supplier shall not be binding on the consumer.

Pursuant to Schedule 2 of the Regulations, an "Indicative and Non-Exhaustive List of Terms Which May Be Regarded as Unfair," contract terms which limit a consumer's litigation rights are unfair and hence unenforceable:

> 1. Terms which have the object or effect of –
>
> . . . (q) excluding or hindering the consumer's right to take legal action or exercise any other legal remedy, particularly by requiring the consumer to take disputes exclusively to arbitration not covered by legal provisions, unduly restricting the evidence available to him or imposing on him a burden of proof which, according to the applicable law, should lie with another party to the contract.

According to Mr. Berkin (Berkin Decl. ¶6), these provisions render the forum selection clause unenforceable by itself and also because the clause was never communicated to Bergeron, but rather only to his insurance broker. (Golden Decl. ¶4)

Second, the forum selection clause is not enforceable even if the Renewal Quotation

and Policy are considered to be commercial in nature, because it contravenes Council

Regulation (EC) No.: 44/2001 ("Council Regulation"), based upon and identical to the

Convention on Jurisdiction and the Enforcement of Judgments in Civil and Commercial

Matters (Brussels), September 27, 1968, 12 U.N.T.S. 153 ("Convention").

In Estasis Salotti de Colzani Aimo v. RÜWA Polstereimaschinen GmbH, ECJ Case

No.: 24/76 [1976] ECR 1831, the European Court of Justice held that a forum selection clause

on the back of a pre-printed form by which a German company offered to sell machinery

to an Italian company was unenforceable because it did not give adequate notice to the

prospective purchaser.  The holding of the court was as follows:

> Where a clause conferring jurisdiction is included among the
> general conditions of sale of one of the parties, printed on the
> back of a contract, the requirement of a writing under the first
> paragraph of Article 17 of the Convention of 27 September 1968
> on Jurisdiction and the Enforcement of Judgments in Civil and
> Commercial Matters is fulfilled only if the contract signed by
> both parties contains an express reference to those general
> conditions.

> In the case of a contract concluded by reference to earlier
> offers, which were themselves made with reference to the
> general conditions of one of the parties including a clause
> conferring jurisdiction, the requirement of a writing under the
> first paragraph of Article 17 of the Convention is satisfied only
> if the reference is express and can therefore be checked by a
> party exercising reasonable care.

The forum selection clause printed on the back of the Renewal Quotation is

unenforceable under Estasis Salotti because it was not expressly referred to in the Policy

19

and because, although required by its terms to be signed by Bergeron, was not signed by him or the broker. See also Galeries Segoura SPRL v. Bonakdarian, ECJ Case No.: 25/76 [1976] ECR 1851.

In short, Lloyd's cannot rely upon the Renewal Quotation to oust this Court of jurisdiction.[14]

III.   INTERNATIONAL COMITY DOES
       NOT REQUIRE DISMISSAL IN
       FAVOR OF THE LONDON ACTION

Contrary to Lloyd's contention, the international comity doctrine does not require this Court to dismiss this action in favor of the lawsuit Lloyd's commenced in England. This is especially so since even less has occurred in the London action than in this case.

In Royal & Sun Alliance Ins. Co. of Canada v. Century Int'l Arms, Inc., 466 F.3d 88, 92 (2d Cir. 2006), the Second Circuit made it clear that in addition to being "amorphous," "fuzzy" and "imprecise," international comity is a matter of discretion which is distinct from forum non conveniens considerations. Generally, parallel proceedings here and abroad are permitted:

> Parallel proceedings in the same in personam claim should
> ordinarily be allowed to proceed simultaneously, at least until
> a judgment is reached in one which can be pled as res judicata

---

[14]   The Bremen court also held that a forum selection clause is not enforceable if the forum designated in it "is seriously inconvenient for the trial of the action." M/S Bremen, supra, 407 U.S. at 16. For the reasons explained at 7-9, 11-13, supra, a trial in London would be seriously inconvenient.

in the other.

Id., 466 F.3d at 92.

Because even mere abstention in favor of a foreign action is the exception, not the rule, dismissal in favor of a foreign action requires "exceptional circumstances" which would justify a departure from "a district court's 'virtually unflagging obligation' to exercise its jurisdiction." Id., 466 F.3d at 93. No such circumstances are present here.[15]

Thus, the courts have not hesitated to permit an American lawsuit to move forward even when filed after a foreign suit. In re Air Crash Near Nantucket Island, 392 F.Supp.2d 461 (E.D.N.Y. 2005).[16] This is especially so when the foreign action, even if filed first, is in an incipient stage. See, e.g., Mastercard Int'l Inc. v. Argencard Sociedad Anonima, 2002 WL 432379 at *8 (S.D.N.Y. 2002), in which this Court declined to stay the action before it because an earlier action in Argentina "was still in its infancy."

Although Lloyd's declaratory judgment action against Bergeron, Cavlam and "Cavalam Ltd." in the High Court of Justice was commenced in May 2006, that action too is in its infancy and nothing substantive has occurred.

---

[15]    Contrary to Lloyd's argument, the forum selection clause is not an exceptional circumstance since, as discussed above, it is not enforceable.

[16]    Finova Capital Corp. v. Ryan Helicopters U.S.A., Inc., 180 F.3d 896 (7th Cir. 1999), heavily relied upon by Lloyd's, is easily distinguishable, since the subject matter of the dispute, a helicopter, was within the jurisdiction of the foreign court, which would have had to enforce any judgment rendered awarding ownership.

It was only in mid-2007 that Lloyd's obtained a court order permitting it to make service upon Bergeron by serving his New York counsel. (See Rowin Opp. Aff. Exh. C.) Bergeron is the only defendant to have been served. And, the acknowledgment of service filed on his behalf in August 2007 specifically reserving his right to contest jurisdiction: "The defendant intends to contest jurisdiction." (Id.)

More importantly, at the joint request of the parties, the London action has been repeatedly stayed since the acknowledgment of service was filed, in order to permit Lloyd's second marine surveyor to complete his work and to keep open the possibility of settlement talks. The last stay granted by High Court of Justice will expire on July 25, 2008; however, the parties have agreed to make a joint application to extend the stay for an additional two months. (Rowin Opp. Aff. ¶4)

In addition, as explained in the Berkin declaration, Bergeron intends to seek the dismissal of the London action, on a variety of grounds. It is thus unlikely that Lloyd's London action will even reach the merits.

IV.    IF THE MOTION IS GRANTED,
       CONDITIONS SHOULD BE IMPOSED

The parties' dispute has nothing to do with London and this motion should thus be denied. At the very least, however, the Court should permit the litigation to remain in the United States by transferring it to another district pursuant to 28 U.S.C. §1404(a). Iragorri, 274 F.3d at 72 n.4 ("Where good reasons support conducting the litigation in the United

States, but another U.S. district is markedly more convenient than the plaintiff's chosen forum," a §1404(a) transfer "will often be preferable" to dismissal.)  It is respectfully submitted that the District of Maryland, where the policy was delivered to Bergeron's broker, or the Southern District of Florida, where Florida Nautical Surveyors, Inc., which conducted the 2000 survey relevant to the issue of the value of the "Amira," is located, would be appropriate transferee districts.

However, if the Court grants Lloyd's motion, it should impose certain conditions upon Lloyd's to make sure that Bergeron is not unduly prejudiced: (a) Lloyd's should be required to permit any expert witness to be deposed. (Bergeron would agree to the same condition.)  (b) Lloyd's should be required to waive a security bond for costs. Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 94 (2d Cir. 2000).

## CONCLUSION

When, as required by Iragorri, 274 F.3d at 74, the focus is placed on "the precise issues that are likely to be actually tried," it is clear that Lloyd's has failed to meet its heavy burden of demonstrating that convenience favors litigation in London rather than in this district.  Key among these are the fact that, since the yacht sank in Venezuela, all of the witnesses to the sinking of the yacht reside far closer to New York than they do to London, rendering critical discovery easier if the case remains here.

In addition, the forum selection clause is not enforceable under English law and the

23

fact that Lloyd's commenced litigation in London is irrelevant, given the fact that nothing

has happened in the English case.

     For all of these reasons, Lloyd's motion should be denied in its entirety.

Dated: New York, New York
      July 11, 2008

                          LYNCH ROWIN LLP

By: _____
              Marc Rowin (MR 6758)
              630 Third Avenue
              New York, New York 10017
              (212) 682-4001
              mrowin@lynchrowin.com
              Attorneys for Plaintiffs