UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

CAVLAM BUSINESS LTD. and JEAN MAURICE
BERGERON,

08 CV 2225 (JGK)

Plaintiffs,

DECLARATION OF JEAN
- against -                                          MAURICE BERGERON

CERTAIN UNDERWRITERS AT LLOYD'S,
LONDON,

Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

JEAN MAURICE BERGERON, declares under penalty of perjury pursuant to 28

U.S.C. §1746 as follows:

1.         I am one of the plaintiffs in this action and am the sole shareholder of

Cavlam Business Ltd., the other plaintiff.  I submit this declaration in opposition to the

motion to dismiss filed by defendant Certain Underwriters at Lloyd's, London.

2.         I am a 75 year old citizen of France.  Since the mid-1980's, I have been a

permanent resident of The Commonwealth of the Bahamas.  I have always been

residing at Suffolk House, Apt. 12, Paradise Island, Nassau.  Annexed hereto as Exhibit

A are copies of the documents evidencing my status as a permanent resident of the

Bahamas.  As usual, I have applied to renew my status as a permanent resident of the

Bahamas for an additional year.

3.          Annexed hereto as Exhibit B is a copy of my current passport, issued at the French Consulate in Miami, Florida, listing my domicile as Suffolk House, Nassau, the Bahamas, as well as in my precedent passport issued in 1994.

4.          Cavlam is a non-operating British Virgin Islands corporation which I had formed to hold formal title to a 1972 Bertram 63 foot motor yacht called the "Amira." Cavlam has no income and capital of its own.

5.          I purchased the "Amira" in 1999 at the Miami's Boat Show in Florida. I spent over a year preparing the vessel for long cruising in the Caribbean by upgrading technical equipment and enhancing the living quarters. This work was all done in Ft. Lauderdale, Florida, where I rented a private dock in the Las Olas Boulevard area. After this work was done, for several months I kept the "Amira" at Ruffy's Marina in Hollywood, Florida between trips to the Florida Keys and Gulf of Mexico. I then began sailing in the southern part of the Caribbean, including Venezuela.

6.          It should be noted that, despite some insinuations in Lloyd's moving papers, I have never sailed the "Amira" to Europe. The vessel was only sailed off the Florida coast, the Bahamas and the Caribbean. From the time I purchased it 1999 until it sank in December 2004, the "Amira" was used solely for my own personal pleasure.

7.          The "Amira" was surveyed and appraised in 2000 by Florida Nautical

Surveyors, Inc. in Ft. Lauderdale.

8.          International Marine Insurance Services (IMIS), an insurance broker located in Maryland, has been my broker since 1999. In March 2003, through IMIS, I obtained insurance for the "Amira" through Lloyd's for a one year period. The "Amira" was insured for sailing along the southern coast of the United States and throughout the Caribbean. The "Amira" was insured for a total value of $510,000.

9.          The insurance policy was renewed in March 2004 for a one year period. Lloyd's motion relies in part on a document entitled "Renewal Quotation," which contains language stating that all litigation concerning the policy has to be brought in London, England.   I never saw the Renewal Quotation, never signed it, never authorized it to be signed and would never have agreed to language requiring me to bring a lawsuit in England. Since I spend nearly all of my time in the Bahamas or other parts of the Caribbean, litigation in England would be far less convenient for me than litigation in New York City, a place I visit several times a year. I have not been in England since 1997 or 1998.

10.         In December 2004, my crew and I sailed the "Amira" from Trinidad and Tobago, where I had had extensive work done to upgrade the vessel, to Isla de Margarita (Margarita Island), Venezuela.  We arrived at the Astillero & Varadero del Caribe shipyard late in the evening of December 11, 2004. The following morning, I left

Venezuela and traveled to Paris to conduct some personal business. My crew stayed on board the "Amira" until December 15, 2004.

11.        On December 20, 2004, I found an email, sent to me on December 18, 2004 by the shipyard, advising me that the "Amira" had sunk while tied up at the wharf where I had left her. I returned to Isla de Margarita as soon as I was able.

12.        Because I was not present on Isla de Margarita when the "Amira" sank, information about what happened will have to be obtained from non-party witnesses who were present. As far as I know, the individuals discussed below, among others, all have relevant knowledge about the vessel and its sinking.

13.        Raymond Denoon was the crew member in charge of maintenance on the "Amira." He remained on the vessel after I left for France. He presently resides in Trinidad and Tobago.

14.        Randy Whittaker was also a crew member on the "Amira". He also remained on the vessel after I left for France. I believe he resides in Trinidad & Tobago.

15.        Philippe Phillipart was the owner of the Astillero & Varadero del Caribe shipyard. He sold the shipyard and may have emigrated to Canada.

16.        Jacky Genard, the operations manager of the Astillero & Varadero del Caribe shipyard, was present the evening the "Amira" arrived. Genard is the person who sent me the email about the sinking. I believe he resides in Venezuela.

4

17.        Eulalio Antonio Velasquez was a security guard at the Astillero & Varadero del Caribe shipyard. He still resides on Isla de Margarita.

18.        Marcel Bieder was the head of security at the Astillero & Varadero del Caribe shipyard. He still resides next to the shipyard on Isla de Margarita.

19.        Randy Marin was the guard on duty when the "Amira" sank at the Astillero & Varadero del Caribe shipyard. He still resides on Isla de Margarita.

20.        Willy Astudillo is a member of the Venezuelan National Guard. When the "Amira" arrived at Isla de Margarita, he inspected the "Amira" for security and immigration purposes, including searching for contraband. During the course of his inspection, Mr. Astudillo noted that the "Amira"'s general condition was good. Mr. Astudillo still resides on Isla de Margarita.

21.        Sergeant Marco Gamez was the supervisor of the Venezuelan National Guard who inspected the "Amira" upon its arrival in Isla de Margarita and issued the Inspection's Report. He is still assigned to the same patrol boat, which puts into Isla de Margarita periodically. Mr. Astudillo still resides on Isla de Margarita.

22.        After the "Amira" sank, I filed a claim with Lloyd's. The materials annexed hereto as Exhibit C are the sole policy terms which were provided to me in March 2003 and March 2004.

23.        The testimony of these individuals regarding the physical condition of the

"Amira" and the timeline of events is relevant to this action for the following reason. Kermit "Butch" Naylor, a marine surveyor hired by Lloyd's in 2005, concluded that the "Amira" sank due to water dripping into the hull through the port propeller shaft packing gland and seeping from the port and starboard rudder shaft packing glands. Experts retained by me have concluded that the amount of water which could have entered the hull through these openings in the period of time from December 15, 2004, when my crew left the "Amira" -- under the responsibility of the Astillero & Varadero del Caribe shipyard -- to December 18, 2004, when the email about the sinking was sent to me, was not sufficient to cause the vessel to sink. This means that Lloyd's position that the "Amira" sank because I did not maintain it in a safe condition is not only wrong, but defies the laws of physics.

24.         In mid-2007, I found out that Lloyd's had brought a lawsuit against me in the High Court of Justice, Queen's Bench Division, Commercial Court, seeking a declaration that it is not liable to indemnify me under the insurance policy. I intend to seek dismissal of this action on a variety of grounds, including lack of jurisdiction. Attached hereto as Exhibit D are the materials which my barrister will be submitting to the English court to seek dismissal of Lloyd's suit there.

25.         I have decided to contest the jurisdiction of the English court because I believe that it would be very inconvenient for me to have to travel to England, since, as

noted above, I live in the Bahamas. In this regard, it should be noted that in contrast to Lloyd's, I have more limited financial means and litigating in England will cause me severe financial hardship.

Dated this 10th day of July, 2008.

JEAN MAURICE BERGERON

FORM II

N 12855

00113925
RENEWAL

File No. FhL62314

Fee Paid $ 1,00000

## PERMIT TO RESIDE

Mr.
Mrs. JEAN MAURICE GEORGES
Miss                         BERGERON

is hereby authorized to enter and remain in the Bahama Islands subject to provisions of the Immigration Act 1967 for the purposes of:—

RESIDING WITHIN THE COMMONWEALTH
OF THE BAHAMAS

This permit is subject to the condition that the holder shall not engage in any gainful occupation. Contravention of this condition will render the holder liable to criminal proceedings and may entail cancellation of this permit.    THE HOLDER OF THIS PERMIT
MUST BE IN POSSESSION OF A VALID PASSPORT.

This permit is valid for the period commencing on the date hereof and ending on the    16    day of JULY    20 08



S⸳⸳⸳⸳⸳⸳⸳⸳⸳⸳⸳⸳⸳⸳⸳⸳⸳⸳⸳⸳⸳
Director of Immigration

Date 02 DECEMBER 2007

FORM II                    **N** 9368

00067449                   File No. FM62314

~~RENEWAL~~                 Fee Paid $ 1000.00

## PERMIT TO RESIDE

Mr.
Mrs. JEAN MAURICE BERGERON
Miss

is hereby authorised to enter and remain in the Bahama Islands subject to provisions of the Immigration Act 1967 for the purposes of:—

RESIDING IN THE COMMONWEALTH OF THE BAHAMAS

This permit is subject to the condition that the holder shall not engage in any gainful occupation. Contravention of this condition will render the holder liable to criminal proceedings and may entail cancellation of this permit.

THE HOLDER OF THIS PERMIT MUST BE IN POSSESSION OF A VALID PASSPORT

This permit is valid for the period commencing on the date hereof and ending on the          16          day of JULY          20 07



.................................................
Director of Immigration

Date 01 OCT. 2006

FORM II

**N** 8730

00051908

File No. FN6231H

RENEWAL

Fee Paid $ 1000.00

## PERMIT TO RESIDE

Mr.
Mrs. JEAN MAURICE BERGERON
Miss

is hereby authorised to enter and remain in the Bahama Islands subject to provisions of the Immigration Act 1967 for the purposes of:—

RESIDING IN THE COMMONWEALTH OF THE BAHAMAS

This permit is subject to the condition that the holder shall not engage in any gainful occupation. Contravention of this condition will render the holder liable to criminal proceedings and may entail cancellation of this permit. THE HOLDER OF THIS PERMIT MUST BE IN POSSESSION OF A VALID PASSPORT

This permit is valid for the period commencing on the date hereof and

ending on the            16   day of JULY      20 0L



................................................
Director of Immigration

Date 11 MAY 2006

FORM II                                N 2016

0026900                                File No. FR62314

**RENEWAL**                            Fee Paid $ 1000.00

## PERMIT TO RESIDE

Mr.
Mrs.    JEAN MAURICE BERGERON
Miss

is hereby authorised to enter and remain in the Bahama Islands subject to
provisions of the Immigration Act 1967 for the purpose of

RESIDING IN THE COMMONWEALTH OF
THE BAHAMAS .

This permit is subject to the condition that the holder shall not engage in
any gainful occupation. Contravention of this condition will render the
holder liable to criminal proceedings and may entail cancellation of this
permit.                              THE HOLDER OF THIS PERMIT
                                     MUST BE IN POSSESSION OF A VALID PASSPORT.

This permit is valid for the period commencing on the date hereof and

ending on the          16      day of JULY          2005



                                     Director of Immigration

                                     Date 28 OCT. 2004

**RENEWAL**

FORM II     N    1163

File No. FA 6231

Fee Paid $ 1000.0

0026373

## PERMIT TO RESIDE

Mr.
Mrs.   JEAN MAURICE BERGERON
Miss

is hereby authorised to enter and remain in the Bahama Islands subject to provisions of the Immigration Act 1967 for the purposes of:—

RESIDING IN THE COMMONWEALTH OF THE BAHAM

This permit is subject to the condition that the holder shall not engage in any gainful occupation. Contravention of this condition will render the holder liable to criminal proceedings and may entail cancellation of this permit. THE HOLDER OF THIS PERMIT MUST BE IN POSSESSION OF A VALID PASSPORT.

This permit is valid for the period commencing on the date hereof and ending on the    16   day of   JULY    19 2004



Director of Immigration

Date 19 Nov. 2003

**RENEWAL**

FORM II

**N** 08791

File No FAL2314

Fee Paid $ 1000.00

DO24591

## PERMIT TO RESIDE

Mr.
Mrs.    JEAN MAURICE BERGERON
Miss

is hereby authorised to enter and remain in the Bahama Islands subject to provisions of the Immigration Act 1967 for the purposes of:—

RESIDING WITHIN THE COMMONWEALTH OF THE BAHAMAS

This permit is subject to the condition that the holder shall not engage in any gainful occupation. Contravention of this condition will render the holder liable to criminal proceedings and may entail cancellation of this permit. ~~THE HOLDER OF THIS PERMIT~~ MUST BE IN POSSESSION OF A VALID PASSPORT.

This permit is valid for the period commencing on the date hereof and ending on the ___16___ day of ___JULY___ 19 2003



.................................................
Director of Immigration

Date 15 NOV 2002

FORM II          N    5486

# RENEWAL
## A700355

File No. FR L2314

Fee Paid $ 1,000.00

# PERMIT TO RESIDE

Mr.
Mrs.    JEAN  M.  BERGERON
Miss

is hereby authorised to enter and remain in the Bahama Islands subject to provisions of the Immigration Act 1967 for the purposes of:—

RESIDING  IN  THE  COMMONWEALTH
OF  THE  BAHAMAS

This permit is subject to the condition that the holder shall not engage in any gainful occupation. Contravention of this condition will render the holder liable to criminal proceedings and may entail cancellation of this permit.

THE HOLDER OF THIS PERMIT
MUST BE IN POSSESSION OF A VALID PASSPORT

This permit is valid for the period commencing on the date hereof and ending on the          16th day of      JULY          19 2002





Director of Immigration

Date    14-08-01

Received original

3/187 01

FORM II      N      308

A287900 **RENEWAL**

File No. FR 62

Fee Paid $ 1,000·

## PERMIT TO RESIDE

Mr. JEAN MAURICE BERGER

is hereby authorised to enter and remain in the Bahama Islands subject
to provisions of the Immigration Act 1967 for the purposes of:—

RESIDING IN THE COMMONWEALT
OF THE BAHAMAS

This permit is subject to the condition that the holder shall not engage
in any gainful occupation. Contravention of this condition will render
the holder liable to criminal proceedings and may entail cancellation of
this permit.       THE HOLDER OF THIS PERMIT
MUST BE IN POSSESSION OF A VALID PASSPORT

This permit is valid for the period commencing on the date hereof and

ending on the    16TH    day of JULY    2002



Director of Immigration

Date 11TH AUG 2000

RENEWAL          FORM II          N       1058

G 148300

File No. FR 6231.

Fee Paid $ 1000.0

## PERMIT TO RESIDE

Mr.
Mrs.    JEAN MAURICE BERGERON
Miss

is hereby authorised to enter and remain in the Bahama Islands subject to provisions of the Immigration Act 1967 for the purposes of:—

RESIDING IN THE COMMONWEALTH OF THE BAHAMAS.

This permit is subject to the condition that the holder shall not engage in any gainful occupation. Contravention of this condition will render the holder liable to criminal proceedings and may entail cancellation of this permit.   THE HOLDER OF THIS PERMIT MUST BE IN POSSESSION OF A VALID PASSPORT.

.This permit is valid for the period commencing on the date hereof and ending on the        LOth        day of JULY        19

2000



Director of Immigration

Date 21ST July 1999

F1956215

FORM II

No 88730

## RENEWAL

File No. FA6231

Fee Paid $1,000.0

## PERMIT TO RESIDE

Mr.
Mrs. JEAN MAURICE BERGERON
Miss

is hereby authorised to enter and remain in the Bahama Islands subject
to provisions of the Immigration Act 1967 for the purposes of:—

RESIDING IN THE COMMONWEALTH OF TH
BAHAMAS

This permit is subject to the condition that the holder shall not engage
in any gainful occupation. Contravention of this condition will render
the holder liable to criminal proceedings and may entail cancellation of
this permit.                    THE HOLDER OF THIS PERMIT
MUST BE IN POSSESSION OF A VALID PASSPORT

This permit is valid for the period commencing on the date hereof and
ending on the                 31 day of JULY    19 99



Director of Immigration

Date 2 September 1998

FORM II    №º 85618

File No. FR.62314

F 1097320

# RENEWAL Fee Paid $ 1000.00

## PERMIT TO RESIDE

Mr.
Mrs.    JEAN M. BERGERON
Miss

is hereby authorised to enter and remain in the Bahama Islands subject to provisions of the Immigration Act 1967 for the purposes of:—

RESIDING IN THE COMMONWEALTH OF THE BAHAMAS.

This permit is subject to the condition that the holder shall not engage in any gainful occupation. Contravention of this condition will render the holder liable to criminal proceedings and may entail cancellation of this permit. MUST BE IN POSSESSION OF A VALID PASSPORT

This permit is valid for the period commencing on the date hereof and ending on the 6th day of JULY 19 98

7th JULY 1997

PHOTOGRAPH



Director of Immigration

Date 2ND JUNE 1997





04AE64282 9

RÉPUBLIQUEFRANÇAISERÉPUBLIQUEFRANÇAISERÉPUBLIQUEFRAN

# Union européenne

*Unión europea / Den europæiske union*
*Europäische Gemeinschaft / Ευρωπαϊκή Ένωση*
*European Union / An tAontas Eorpach*
*Unione europea / Europese unie / União europeia*
*Euroopan unioni / Europeiska unionen*

---

# République française

*República francesa / Den franske republik*
*Französische Republik / Γαλλική Δημοκρατία*
*The French Republic / Poblacht na Fraince*
*Repubblica francese / Republiek Frankrijk*
*República francesa / Ranskan tasavalta*
*Republiken Frankrike*

---

# Passeport

*Passaporte / Pas / Reisepass / Διαβατήριο*
*Passport / Pas / Passaporto / Pasaport*
*Passaporte / Passi / pass*

04AE64282                                    01



## Recommandations importantes

1. Ce passeport demeure la propriété de l'État français. Il est remis à titre strictement personnel au porteur pour lui permettre de voyager librement à l'étranger. Il doit être signé et ne peut être prêté.

2. Il est interdit d'y effectuer des grattages, corrections, ratures, surcharges et adjonctions de mentions ou de feuillets supplémentaires. Toute rectification non opérée par l'autorité compétente entraîne la nullité du titre, sans préjudice de poursuites judiciaires.

3. En cas de perte ou de destruction, le titulaire doit en informer immédiatement l'autorité administrative ou consulaire compétente la plus proche.

4. Avant son départ pour l'étranger, le titulaire doit s'assurer que son passeport possède une durée de validité suffisante et s'enquérir des conditions d'entrée et de séjour dans le pays de destination auprès du consulat compétent. Il doit aussi s'assurer qu'il disposera de moyens de paiement suffisants en monnaie étrangère pour couvrir les frais de son retour, nos consulats ne pouvant prendre en charge les frais de son rapatriement.

5. Le renouvellement d'un passeport expiré au cours d'un séjour à l'étranger doit être demandé au consulat de France le plus proche.

6. Il est recommandé au Français qui établit sa résidence à l'étranger de se faire immatriculer au consulat dès son arrivée dans la circonscription consulaire. Cette formalité est gratuite.

7. Les enfants ayant atteint l'âge de 15 ans doivent être munis d'un passeport individuel.

Les Français désireux de se fixer à l'étranger peuvent se mettre en rapport avec le ministère des Affaires étrangères pour obtenir des renseignements sur leur futur pays d'accueil. Téléphone : 01 43 17 60 79



Ce passeport contient 36 pages / Dette pas bestàr of 36 sider / Dieser Paß enthält 36 Seiten / To διαβατήριο αυτό περιέχει 36 σελίδες / This passport contains 36 pages / Té 36 leathanach a phas seo / Questo passaporto contiene 36 pagine / Dit paspoort bevat 36 bladzijden / Este passaporte é composto por 36 páginas / Tämä passi sisältää 36 sivua / Passet innehåller 36 sidor.



RÉPUBLIQUE FRANÇAISE

PASSEPORT
PASSPORT

Type / Type
P

Code du pays / Country code
FRA

Passeport n° / Passport n°
0AAE64282

Nom / Surname (1)
BERGERON

Prénoms / Given names (2)
Jean, Maurice, Georges

Nationalité / Nationality (3)
Française

Date de naissance / Date of birth (4)
24-05-1933

Sexe / Sex (5)    Taille / Height (6)
M                1,81 m

Lieu de naissance / Place of birth (7)
BORDEAUX (33)

Couleur des yeux / Colour of eyes (8)
Marron

Autorité / Authority (9)
P/ LE MINISTRE DES AFFAIRES
ÉTRANGÈRES,
Le Directeur des Français à l'étranger
et des étrangers en France

Date de délivrance / Date of issue (10)
10-03-2004

Date d'expiration / Date of expiry (11)
09-03-2014

F. BARRY DELONGCHAMPS

Signature du titulaire / Holder's signature (13)

P<FRABERGERON<<JEAN<<<<<<<<<<<<<<<<<<<<<<<<
0AAE64282FRA3305245M1403099<<<<<<<<<<<<<<06



Visas

04

05





















Visas
Visas

24
25



Visas

Visas

26

27



Visas

Visas

28

29







Visas

34



Recommandations importantes

Le passeport demeure la propriété de l'État français. Il est remis à titre strictement personnel au porteur pour lui permettre de voyager librement à l'étranger. Il doit être signé et ne peut être prêté.

Il est interdit d'y effectuer des grattages, corrections, ratures, surcharges et adjonctions de mentions ou de feuillets supplémentaires. Toute rectification non opérée par l'autorité compétente entraîne la nullité du titre, sans préjudice de poursuites judiciaires.

1. En cas de perte ou de destruction, le titulaire doit en informer immédiatement l'autorité administrative ou consulaire compétente la plus proche.

2. Avant son départ pour l'étranger, le titulaire doit s'assurer que son passeport possède une durée de validité suffisante et s'enquérir des conditions d'entrée et de séjour dans le pays de destination auprès du consulat compétent. Il doit aussi s'assurer qu'il disposera de moyens de paiement suffisants en monnaie étrangère pour couvrir les frais de son retour, nos consulats ne pouvant prendre en charge les frais de son rapatriement.

3. Le renouvellement d'un passeport expiré au cours d'un séjour à l'étranger doit être demandé au consulat de France le plus proche.

4. Il est recommandé au Français qui établit sa résidence à l'étranger de se faire immatriculer au consulat dès son arrivée dans la circonscription consulaire. Cette formalité est gratuite.

5. Les enfants ayant atteint l'âge de 15 ans doivent être munis d'un passeport individuel.

Les Français désireux de se fixer à l'étranger peuvent se mettre en rapport avec le ministère des Affaires étrangères pour obtenir des renseignements sur leur futur pays d'accueil. Téléphone : 01 43 17 60 79

Ce passeport contient 36 pages / Dette pas består af 36 sider / Dieser Paß enthält 36 Seiten / To passport comtains 36 siddes / This passport contains 36 pages / To 36 leathenach e phas seo / questo passaporto contiene 36 pagine / Dit paspoort bevat 36 bladzijden / Este passeporte é composto de páginas / Tämä passi sisältää 36 sivua / Passet innehåller 36 sidor.

Voir en dernière page la rubrique
RECOMMANDATIONS IMPORTANTES

NIP:1695071236 3
BERGERON
JEAN MAURICE

93AE07414

Nº 390/94

COMMUNAUTÉ EUROPÉENNE
DET EUROPÆISKE FÆLLESSKAB
EUROPÄISCHE GEMEINSCHAFT
EYPΩΠAÏKH KOINOTHTA
EUROPEAN COMMUNITY
COMUNIDAD EUROPEA
AN COMHPHOBAL EORPACH
COMUNITA' EUROPEA
EUROPESE GEMEENSCHAP
COMUNIDADE EUROPEIA

RÉPUBLIQUE FRANÇAISE
DEN FRANSKE REPUBLIK
FRANZÖSISCHE REPUBLIK
ΓAΛΛIKH ΔHMOKPATIA
THE FRENCH REPUBLIC
REPUBLICA FRANCESA
POBLACHT NA FRAINCE
REPUBBLICA FRANCESE
FRANSE REPUBLIEK
REPUBLICA FRANCESA

PASSEPORT
PAS ● REISEPASS
ΔIABATHPIO ● PASSPORT
PASAPORTE ● PAS ● PASSAPORTO
PASPOORT ● PASSAPORTE



1. Nom/Surname
= BERGERON =

2. Prénoms/Given names
Jean Maurice Georges

3. Nationalité Française/French Nationality

4. Date de naissance/Date of birth
24 Mai /33

5. Sexe/Sex
M

6. Lieu de naissance/Place of birth
BORDEAUX
(GIRONDE)

7. Date de délivrance/Date of issue
08 SEPT / 94

9. Autorité/Authority
Pierre-Yves KERVENNAL
Vice-Consul
Chef de Chancellerie

8. Date d'expiration/Date of expiry
05 AVR / 99

10. Signature du titulaire/Holder's signature

11. Domicile/Residence
Suffolk House
NASSAU BAHAMAS

Nouveaux domiciles/New residences

12. Taille/Height
1 m 81

13. Couleur des yeux/Colour of eyes
VERTE

14. La validité du présent passeport est prorogée jusqu'au/Extension of the passport

Autorité/Authority

Fait le/Extended on

POLICE NATIONALE
PORT DE FRANCE - Le Lamentin
1 2 JAN. 1999
MARTINIQUE
H 062

K.L.
MALAYSIA
INTERNATIONAL
IMMIGRATION
B6
29 SEP 1998
58
41
KELUAR
1

SOCIAL VISIT
MALAYSIA IMMIGRATION
BKT. K.H. CHANGLOON
Imm. Reg. 81
28 SEP 1998
Permitted to enter and
to West
until 27 DEC 1998
RNP

FEB 1 1 1999
ADMITTED
UNTIL

U.S. IMMIGRATION
NEW YORK, N.Y. 230
Y 3 0 1998
ADMITTED
UNTIL

1. Nom
Surname

2. Prénoms
Given names

4. Date de naissance
Date of birth

5. Sexe
Sex

Photographies des enfants/Photographs of children

Forbeholdt de paandstedende myndigheder / Amtliche Vermerke / Προοριζεται για τις αρχές που είναι αρμόδιες για την έκδοση του διαβατηρίου / Page reserved for issuing authorities / Página reservada a las autoridades competentes para expedir el pasaporte / Tagabi / Pagina riservata all'autorità / Opmerkingen van bevoegde instanties / Página reservada às entidades competentes para emitir o passaporte.

RÉPUBLIQUE
★000
FRANÇAISE

AUSTRALIA VISA

CLASS TR  VISITOR P<<<
SUB CLASS 676
CONDITIONS MIG.REGS
8101 NO WORK
8201 MAX 3 MONTHS STUDY

MUST NOT ARRIVE AFTER 05JUN98.
HOLDER(S) PERMITTED TO REMAIN IN AUSTRALIA FOR 03 MONTHS FROM
DATE OF EACH ARRIVAL.

V601<0225210T1BERGERON<<JEAN<M<<<<<<<<<<<<<<
93AE07414<<<<<FRAE330524M<TR<676<<<<<<<<<<<<







HZ9RYKU

TEMP.RESIDENCE PERMIT/
TYD.VERBLYFPERMIT
VALID UNTIL/GELDIG TOT
96.07.21
FOR VISIT
VIR BESOEK
PURPOSE OF VISIT MAY NOT BE
CHANGED/DOEL VAN BESOEK MAG
NIE VERANDER WORD NIE
'81-672

U.S. IMMIGRATION
NEW YORK, N.Y.

JUN 12 1996

ADMITTED
UNTIL
U.S. IMMIGRATION
NAS P106

MAY X 5 1996 NAS P107











1. Nom / Efternavn / Name / Επώνυμο / Surname / Apellidos / Cognome / Naam / Apelidos
2. Prénoms / Fornavne / Vornamen / Όνομα / Given names / Nombre / Réam/naim (neacha) / Nome / Voornamen / Nomes próprios
3. Nationalité / Nationalitet / Staatsangehörigkeit / Εθνικότητα / Nationalité / Nacionalidad / Naissonteln / Cittadinanza / Nationaliteit / Nacionalidade
4. Date de naissance / Fødselsdato / Geburtsdatum / Ημερομηνία γεννήσεως / Date of birth / Fecha de nacimiento / Date breithe / Data di nascita / Geboortedatum / Data de nascimento
5. Sexe / Køn / Geschlecht / Φύλο / Sex / Sexo / Gnéas / Sesso / Geslacht / Sexo
6. Lieu de naissance / Fødested / Geburtsort / Τόπος γεννήσεως / Place of birth / Lugar de nacimiento / Áit bhreithe / Luogo di nascita / Geboorteplaats / Local de nascimento
7. Date de délivrance / Udstedelsesdato / Ausstellungsdatum / Ημερομηνία εκδόσεως/Date of issue/Fecha de expedición/Data eisiúna / Data di rilascio / Datum van afgifte / Data de emissão
8. Date d'expiration / Gyldigt indtil / Gültig bis / Λήγει στις / Date of expiry / Este pasaporte expira el / As feidhm / Data di scadenza / Datum einde / geldigheidsduur / Válido até
9. Autorité / Udstedende myndighed / Behörde / Αρχή / Authority / Autoridad / Údarás / Autorità / Instantie / Autoridade
10. Signature du titulaire / Indehaverens underskrift / Unterschrift des Passinhabers / Υπογραφή του κατόχου / Holder's signature / Firma del titular / Síniú an tsealbhóra / Firma del titolare / Handtekening van de houder / Assinatura do titular
11. Domicile / Bopæl / Wohnort / Διαμονή / Residence / Domicilio / Áit chónaithe / Residenza / Woonplaats / Domicílio
12. Taille / Højde / Grösse / Ύψος / Height / Talla / Airde / Statura / Lengte / Altura
13. Couleur des yeux / Øjenfarve / Farbe der Augen / Χρώμα οφθαλμών / Colour of eyes / Color de los ojos / Dath na súl / Occhi / Kleur ogen / Cor dos olhos
14. Prorogation / Gyldigheden forlænget indtil / Verlängert bis / Παρατείνεται μέχρι της / Extension of the passport / La validez del presente pasaporte se prorroga hasta / Pas a athnuachan / Proroghe / Verlengd tot / Renovação concedida até
15. Enfants / Børn / Kinder / Παιδιά / Children / Hijos / Leanaí / Figli / Kinderen / Filhos

OCT 2 0 1994
ADMITTED B-1
UNTIL V10 PP

U.S. IMMIGRATION
210 NEW 328
DEC 1 8 1994
ADMITTED V10 PP
UNTIL CLASS

JAN 1 7 1995



1. Nem/Surname

U.S. IMMIGRATION
C60      PEA      #105

OCT 1 6 1998

DMITTED ——— CLASS
UNTIL



Jean Maurice Bergeron & Cavalam Ltd
PO Box 6174
Nassau
Bahamas

INTERNATIONAL MARINE INSURANCE
462 Kent Narrows Way North
Grasonville
MD 21638-1022
USA

29

## Certificate of Insurance

Issued in accordance with authorisation granted to YACHTSURE under Contract No YS04/0001 underwritten by certain Underwriters at Lloyd's. In consideration of the premium specified below, the said Underwriters are hereby bound each for his own part and not one for another, their heirs, executors and administrators, to insure the vessel(s) named herein, in accordance with the terms and conditions attached hereto.

**Schedule hereto forming part of Certificate No.  M/04/08661**
**Issued in respect of the insurance effected on the vessel(s) named herein, in accordance with your instructions.**

**Period**  03/03/2004  **to**  03/03/2005  **at**  00.01 hours local standard time

| | Name | | | Year Built | Type | | Length |
|---|---|---|---|---|---|---|---|
| **Vessel** | AMIRA | | | 1972 | Bertram 63 | | 19.20  m |
| | | **Ccy** | **Sum Insured** | | | | **Deductible (USD)** |
| **Vessel** | | USD | 500,000 | | | | 11,000 |
| Dinghy and Outboard | | | 10,000 | | | | 500 |
| | | **USD** | **510,000 Total Sum Insured** | | | | |

**In Commission Period**    12 months

**Navigation Limits**    US Atlantic Coast, Bahamas and Caribbean Waters 9-19 degrees North by 58-68 degrees West

**Conditions**
American Yacht Form 77 (P)
Protection and Indemnity 77 (Q) Limited to USD 500,000 any one accident or occurrence subject to a deductible USD 500 each and every claim
Medical Payments 77(S) Limit USD 5,000 any one person/USD 25,000 any one accident or occurrence., subject to a deductible USD 100 each and every claim
Uninsured Boater USD 25,000.   Deductible USD 500 each and every claim
Legality Clause
Privacy Clause (LSW 1135)
Excluding War
Excluding Crew
Warranted vessel below 12.5 degrees North during the period 1st July to 30th November
Warranted no known or reported losses at 31st March 2004.
Warranted Premium paid to Underwriting Risk Services within 45 days of Certificate issue date or cover automatically cancelled with effect from inception.

**Gross Premium**    USD    8,210.00

**Total USD**    **8,210.00**

This Certificate is not valid unless signed  ........................................  **Dated in London  01/04/2004**
Signed for and on behalf of Yachtsure, Gracechurch House, 55 Gracechurch Street, London EC3V 0JP

COMPLAINTS PROCEDURE

If you have a problem concerning any aspect of your insurance please contact your Broker or Yachtsure:

Yachtsure,
Gracechurch House,
55 Gracechurch Street,
London EC3V 0JP

If you are unable to resolve the situation and wish to make a complaint you can do so at any time by referring the matter to the Complaints Department at Lloyd's.

Their address is:

Complaints Department
Lloyd's
One Lime Street
EC3M 7HA

Tel. 020 7327 5693
Fax. 020 7327 5225

E-mail: lloyds-regulatory-complaints@lloyds.com

Complaints that can not be resolved by the Complaints Department may be referred to the Financial Ombudsman Service. Further details will be provided at the appropriate stage of the complaints process.

**Name of Insured**
Jean Maurice Bergeron & Cavalam Ltd
PO Box 6174
Nassau
Bahamas

YACHTSURE
insurance

International Marine Insurance Services
208 Piney Narrows Road
Chester
Maryland 21619
USA

**31**

## Certificate of Insurance

Issued in accordance with authorisation granted to YACHTSURE under Contract No YS03/0001 underwritten by certain Underwriters at Lloyd's. In consideration of the premium specified below, the said Underwriters are hereby bound each for his own part and not one for another, their heirs, executors and administrators, to insure the vessel(s) named herein, in accordance with the terms and conditions attached hereto.

**Schedule hereto forming part of Certificate No.  M/03/08661**
**Issued in respect of the insurance effected on the vessel(s) named herein, in accordance with your instructions.**

**Period**      03/03/2003   **to**   03/03/2004    **at**      00.01 hours local standard time

| | Name | | | Year Built | Type | Length |
|---|---|---|---|---|---|---|
| **Vessel** | AMIRA | | | 1972 | Bertram 63 | 19.20  m |
| | | **Ccy** | **Sum Insured** | | | **Deductible (USD)** |
| **Vessel** | | USD | 500,000 | | | 11,000 |
| **Dinghy and Outboard** | | | 10,000 | | | 500 |

| | USD | 510,000 | **Total Sum Insured** |
|---|---|---|---|

**In Commission Period**        12 months

**Navigation Limits**        US Atlantic Coast, Bahamas and Caribbean Waters 9-19 degrees North by 58-68 degrees West

**Conditions**        American Yacht Form 77 (P)
Protection and Indemnity 77 (Q) Limited to USD 500,000 any one accident or occurrence subject to a deductible USD 500 each and every claim
Medical Payments 77(S) Limit USD 5,000 any one person/USD 25,000 any one accident or occurrence., subject to a deductible USD 100 each and every claim
Uninsured Boater USD 25,000.   Deductible USD 500 each and every claim
Legality Clause
Privacy Clause (LSW 1135)
Excluding War
Excluding n      w
excluding Cargo Shipment
Warranted vessel below 12.5 degrees North during the period 1st July to 30th November
    Nett Premium paid to Yachtsure within 45 days of inception or cover automatically cancelled with
    from inception.

**Gross Premium**        USD        8,210 0

|  | | **Total USD** | **8,210.00** |
|---|---|---|---|

**This Certificate is not valid unless sig** .................................................    **Dated in London  18/03/2003**
Signed for and on behalf of Yachtsure, Gracechurch House, 55 Gracechurch Street, London EC3V 0JP

Yachtsure is a trading name of Underwriting Risk Services Ltd   Registered no. 4260112   Underwriting Risk Services Ltd is a member of the General Insurance Standards Council



aurice Bergeron & Cavalam Ltd
x 6174

as



INTERNATIONAL MARINE INSURANCE
208 Piney Narrows Road
Chester
Maryland 21619
USA

**32**

## Endorsement No A 1 for Certificate No M/03/08661

is hereby understood and agreed that for the effective period the terms are amended as follows:-

ffective Period    03/07/2003  to  03/03/2004
riginal Period     03/03/2003  to  03/03/2004

| | Name | | Year Built | Type | | Length |
|---|---|---|---|---|---|---|
| essel | AMIRA | | 1972 | Bertram 63 | | 19.20 m |

| | Ccy | Sum Insured | | Deductible |
|---|---|---|---|---|
| essel | USD | 500,000 | | 11,000 |
| inghy and Outboard | | 10,000 | | 500 |
| | USD | **510,000 Total Sum Insured** | | |

---

It is hereby understood and agreed that cover herein excludes Named Windstorm losses during the period 1st July and 30th November

---

Al o**er t**rms, clauses and conditions remain unaltered

rement is not valid unless signed                    D ted in London  14/07/2003
Signed for and on behalf of Yachtsure, Gracechurch House, 55 Gracechurch Street, London EC3V 0JP

77Q

May, 1947

# PROTECTION AND INDEMNITY INSURANCE

'AMIRA'

Endorsement to be attached to and made part of Policy No. _M/03/8661_ of

_Lloyd's underwriters care of Yachtsure_ Insurance Company.

If the Assured shall by reason of his interest in the insured Yacht become liable to pay and shall pay any sum or sums in respect of any responsibility, claim, demand, damages, expense or other loss, arising from or occasioned by any of the following matters or things during the currency of this Policy in respect of the Yacht hereby insured, that is to say :—

**Property Damage**  (I)  Loss of or damage to any other ship or boat or goods, merchandise, freight or other things or interests whatsoever, on board such other ship or boat, caused by the Yacht insured in so far as the same would not be covered by the running down clause in this Policy :

Loss of or damage to any goods, merchandise, freight or other things or interest whatsoever other than as aforesaid, whether on board said Yacht or not, which may arise from any cause whatever:

Loss or damage to any harbor, dock, (graving or otherwise), slipway, way, gridiron, pontoon, pier, quay, jetty, stage, buoy, telegraph cable, or other fixed or movable thing whatsoever, or to any goods or property in or on the same, howsoever caused:

Any attempted or actual raising, removal or destruction of the wreck of the insured ship or the cargo thereof, or any neglect or failure to raise, remove or destroy the same:

we will pay the Assured such sum or sums so paid, or which may be required to indemnify the Assured for such loss; PROVIDED always that the amount recoverable hereunder in respect to any one accident or series of accidents arising out of the same event shall not exceed the sum insured on Hull or the first sum insured under Section II of this endorsement in respect to any one person, whichever is greater.

**Personal Injury**  (II)  Loss of life or personal injury and payments made on account of life salvage,

we will pay the Assured such proportion of such sums so paid or which may be required to indemnify the Assured for such loss as the sum insured under this policy on Hull bears to the policy value of the ship (or boat) hereby insured, provided always that the liability of this Company for claims on account of loss of life and/or personal injury and/or on account of life salvage is limited to its proportional part of $_____in respect to any one person and, subject to the same limit for each person, to its proportional part of $_____in respect to any one accident or series of accidents arising out of the same event.

**Costs**  (III)  And in case the liability of the Assured shall be contested in any suit or action, we will also pay such ensuing costs as the Assured may incur with the consent in writing of this Company.

**Return Premiums for Cancellation**  Should this Policy be cancelled in accordance with its terms by the Assured or by this Company, return premium shall be computed as follows:

Where this Policy provides for six (6) months navigation or less, and the premium has been paid, this Company shall return 6% net of the annual premium for every fifteen (15) consecutive days of the unexpired time of the working period and 1% net of the annual premium for every fifteen (15) consecutive days of the unexpired time of the lay-up period. Minimum premium to be retained $10.00.

Where this Policy provides for more than six (6) months navigation, and the premium has been paid, this Company shall return 3% net of the annual premium for every fifteen (15) consecutive days of the unexpired time. Minimum premium to be retained $10.00.

**Proportion of Losses Covered**  Where the amount of insurance on Hull is less than the Agreed Valuation on Hull, this Company shall be liable under this endorsement only for such proportion of any loss recoverable as the said amount of insurance bears to the said Agreed Valuation.

Notwithstanding the foregoing, this endorsement is warranted free from any claim arising directly or indirectly under the Federal "Longshoremen's and Harbor Workers' Compensation Act."

Dated_____19____

CL. A216    _Sold by Witherby & Co. Ltd., London_

YACHT

**34**

## "AMIRA" - Jean Maurice Bergeron & Cavalam Ltd

### General Conditions

| | |
|---|---|
| Privileges | In port and at sea, under power or sail, in docks and graving docks, and on ways, gridirons and pontoons. With leave to sail with or without pilots, to tow and assist vessels or craft in all situations, and to be towed and to go on trial trips. |
| Property Covered | Upon the Hull, Spars, Sails, Tackle, Apparel, Machinery, Boats, and other Furniture of and in the Yacht hereby insured. |
| Perils | Touching the adventures and perils which we, the Assurers, are contented to bear, and to take upon us, they are of the seas, men-of-war, fire, enemies, pirates, rovers, assailing thieves, jettisons, letters of mart and countermart, reprisals, takings at sea, arrests, restraints and detainments of all kings, princes and people, of what nation, condition or quality soever, barratry of the Master and Mariners, and of all other like perils, losses and misfortunes, that have or shall come to the hurt, detriment or damage of said Yacht or any part thereof. |
| Sue and Labor Clause | And in case of any loss or misfortune, it shall be lawful for the Assured, their factors, servants and assigns, to sue, labor and travel for, in and about the defense, safeguard and recovery of the said Yacht or any part thereof, without prejudice to this insurance; the charges whereof we, the Assurers, will pay. And it is especially declared and agreed that no agents of the insurer or insured in recovering, saving or preserving the property insured shall be considered as a waiver or acceptance of abandonment. |
| Latent Defect and Negligence | This insurance shall also cover, subject to the average warranty herein, loss of or damage to the Hull or Machinery caused by negligence of Master, Mariners, Engineers or Pilots, by contact with aircraft, or by explosions, bursting of boilers, breaking of shafts, or any latent defect in the Machinery or Hull (excluding in all the foregoing cases the cost of replacing or repairing any defective part): provided such loss or damage has not resulted from want of due diligence by the Owners of the Yacht, or any of them, or by the Manager, or by the Assured. |
| Average Warranty | If the valuation of the Yacht hereby insured is US$5,000 or over, all losses hereunder shall be payable in full irrespective of percentage.<br><br>If the valuation is less than US$5,000 free from average under US$25 each accident. |
| Running Down Clause | And it is further agreed that if the Yacht hereby insured shall come into collision with any other ship or vessel, and the Assured shall, in consequence thereof, become liable to pay, and shall pay by way of damages to any other person or persons any sum or sums not exceeding in respect of any one such collision the value of the Yacht hereby insured, we the Assurers, will pay the Assured such sum or sums so paid up to the amount hereby insured. And in cases where the liability of the Assured has been contested, with the consent, in writing, of this Company, we will also pay the costs thereby incurred or paid; but when both vessels are to blame, then unless the liability of the owners of one or both of such vessels becomes limited by law, claims under the Collision Clause shall be settled on the principle of Cross Liabilities, as if the owners of each vessel had been compelled to pay the owners of the other of such vessels such one-half or other proportion of the latter's damages as may have been properly allowed in ascertaining the balance or sum payable by or to the Assured in consequence of such collision: and it is further agreed that the principles involved in this Clause shall apply to the case where both vessels are the property, in part or in whole, of the same owners, all questions of responsibility and amount of liability as between the two vessels being left to the decisions of a single Arbitrator, if the parties can agree upon a single Arbitrator, or failing such agreement to the decision of Arbitrators, one to be appointed by the |

managing owners of both vessels, and one to be appointed by the majority in amount of Underwriters interested in each vessel; the two Arbitrators chosen to choose a third Arbitrator before entering upon the reference, and the decision of such single, or any two of such three Arbitrators, appointed as above, to be final and binding.

Provided always that the foregoing clause shall in no case extend to any sum which the Assured may become liable to pay, or shall pay for removal of obstructions under statutory powers, for injury to harbors, wharves, piers, stages and similar structures, consequent on such collisions, or in respect of the cargo or engagements of the Insured Yacht, or for loss of life, or personal injury.

**Valuation Clause**   The said Yacht, for so much as concerns the Assured by agreement between the Assured and the Assurers is and shall be valued at the amount stated under the heading "Agreed Valuation".

**Private Pleasure Warranty**   Warranted to be used solely for private pleasure purposes.

**Transfer of interest**   This insurance shall be void in case this Policy or the interest insured thereby shall be sold, assigned, transferred or pledged without the previous consent in writing of the Assurers.

**Payment of Loss**   In case of loss, such loss to be paid in thirty days after proof of loss and proof of interest in the said Yacht; all indebtedness of the Assured being first deducted.

**Continuation Clause**   If the vessel insured hereunder is at sea at the expiration of this Policy the risk may be continued until the vessel has been anchored or moored at her port of destination for twenty four (24) hours in good safety, provided notice be given to this Company and additional premium paid as required.

**Held Covered Clause**   In the event of any unintentional deviation beyond the waters permitted by this Policy, or unintentional violation of the lay-up warranty if any, it is hereby agreed to hold this Yacht covered, provided notice in writing be given this Company as soon as known to the Assured, and an additional premium paid at rates to be agreed.

**Strikes and Riots**   Warranted free of loss or damage in consequence of strikes, lockouts, political or labor disturbances, civil commotions, riots, martial law, military or usurped power or malicious act.

**F. C. & S. Clause**   Unless physically deleted by the Underwriters, the following warranty shall be paramount and shall supersede and nullify any contrary provision of this policy :

Notwithstanding anything to the contrary contained in the Policy, this insurance is warranted free from any claim for loss, damage or expense caused by or resulting from capture, seizure, arrest, restraint or detainment, or the consequences thereof or of any attempt thereat, or any taking of the Vessel, by requisition or otherwise, whether in time of peace or war and whether lawful or otherwise; also from all consequences of hostilities or warlike operations (whether there be a declaration of war or not), but the foregoing shall not exclude collision, explosion or contact with any fixed or floating object (other than a mine or torpedo), stranding, heavy weather or fire unless caused directly (and independently of the nature of the voyage or service which the vessel concerned or, in the case of a collision, any other vessel involved therein, is performing) by a hostile act by or against a belligerent power, and for the purpose of this warranty "power" includes any authority maintaining naval, military or air forces in association with a power; also warranted free, whether in time of peace or war, from all loss, damage or expense caused by any weapon of war employing atomic fission or radioactive force.

Further warranted free from the consequences of civil war, revolution, rebellion, insurrection, or civil strife arising therefrom, or piracy.

**36**

If war risks are hereafter insured by endorsement on this policy, such endorsement shall supersede the above warranty only to the extent that their terms are inconsistent and only while such war risk endorsement remains in force.

Equipment on Shore

It is also agreed, that should any part of the furniture, tackle, boats or other property of the said Yacht be separated and laid up on shore during the life of this Policy then this Policy shall cover the same to an amount not exceeding 20% of the sum insured. The amount attaching on the said Yacht shall be decreased by the amount so covered.

No Thirds Off

In event of damage, cost of repairs to be paid without deduction of one-third, new for old.

Constructive Total Loss

No recovery for a constructive total loss shall be had hereunder unless the expense of recovering and repairing the vessel shall exceed the agreed valuation.

Exclusions

Warranted free from loss of or damage to spars and/or sails while racing.

Not liable for wages and/or provisions whether the average be particular or general.

Personal Negligence

Personal negligence or fault of the Owner or Assured in the navigation of the Yacht or privity or knowledge in respect thereto (excepting loss, damage or liability wilfully or intentionally caused by the Owner or Assured), shall not relieve the Underwriters of liability under this Policy or the collision clause, or the P. & I. clauses if effective.

Boats and Launches

The Boats and Launches of the Yacht are insured also while afloat, whether under way or not, subject to all of the terms and conditions, including the collision clause, of this Policy.

Proportion of Losses Covered

Where the amount of insurance is less than the Agreed Valuation, this Company shall be liable only for such proportion of any loss recoverable as the said amount of insurance bears to the said Agreed Valuation.

Notice of Cancellation

This Policy may be cancelled at any time at the Assured's request; or by this Company, by giving ten (10) days' written notice of such cancellation.

In the event of cancellation due to the sale of the vessel, underwriters agree daily pro rata return from the date of sale

The terms and conditions of this form are to be regarded as substituted for those of Policy form to which it is attached, the latter being hereby waived, except provisions required by law to be inserted in the Policy.

May, 1947
77P
CLA231

*Wherever reference is made herein to "this Company", it is deemed to read "these Underwriters".*

In consideration of a premium of {Response}Response dollars, this Company agrees to pay to or for each person who sustains bodily injury caused by accident occurring during the insurance period, while in or upon, boarding or leaving the Yacht named above, the reasonable expense of necessary medical, surgical, ambulance, hospital and professional nursing services and, in the event of death resulting from such injury, the reasonable funeral expense, all incurred within one (1) year from the date of accident, subject to the following conditions:

1.    **Limit of Liability.**

Notwithstanding the foregoing, this Company shall not be liable under this insurance for more than US$ 5,000 in respect to any person in any one accident, nor for more than US$ 25,000 in any one accident involving more than one person.

2.    **Exclusions.**

The coverage afforded by this insurance shall not apply:

(1)    To bodily injury to or death of any person:

(a)    To or for whom benefits are payable under any Workmen's Compensation or under the Federal Longshoremen's and Harbor Workers' Compensation Act.

(b)    Who, in being in or upon or in boarding or leaving the insured Yacht, is a trespasser.

(c)    Who is an employee of the Assured.

(2)    To liability assumed by the Assured under any contract or agreement.

(3)    While the above named Yacht is being used for other than private pleasure purposes.

(4)    To bodily injury to or death of the Assured or registered owner of the above named Yacht.

3.    **Medical and Other Reports.**

The injured person, or someone on his behalf, shall, as soon as practicable, furnish full obtainable information pertaining to the accident and injury, and execute authorization to enable this Company to obtain medical reports and copies of records.

4.    **Examination.**

The injured person shall submit to physical examination by physicians selected by this Company when and as often as this Company may reasonably require.

5.    **Proof and Payment of Claim.**

As soon as practicable after completion of the services or after the rendering of services which in cost equal or exceed the limit of this Company's liability under this insurance or after the expiration of one year from the date of accident, whichever first transpires, the injured person, or someone on his behalf, shall give to this Company written proof of claim under oath, stating the name and address of each person and organization which has rendered services, the nature and extent and the dates of rendition of such services, the itemized charges therefor and the amounts paid thereon. Upon the Company's request, the injured person or someone on his behalf shall cause to be given to the Company by each such person and orgaization written proof of claim under oath, stating the nature and extent and dates of rendition of such services, the itemized charges therefor and the payments received thereon.

This Company shall have the right to make payment at any time to the injured person or to any such person or organization on account of the services rendered, and a payment so made shall reduce to the extent thereof the amount payable hereunder to or for such injured person on account of such injury.

No payment made under this insurance shall constitute an admission of liability of the Assured or, except under this insurance, of this Company.

6.    **Action Against Company.**

No action shall lie against this Company unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this insurance, or until thirty (30) days after the required proofs of claim have been filed with this Company.

7.    **Cancellation.**

This insurance may be cancelled at any time at the Assured's request; or by this Company, by giving ten (10) days notice of such cancellation. If cancelled at the request of the Assured, this Company to retain the customary short rates for the time the insurance has been in force, but the minimum premium to be retained shall be $5.00; if cancelled by the Company, to retain or collect the pro rata earned premium for the time the insurance has been in force.

8.    This insurance is not subject to any provision in the Policy for partial refund of premium for no loss, nor shall any loss paid hereunder in any way affect the provision for return of premium appearing elsewhere in this policy.

May, 1947
77S
CLA228

*Whenever reference is made herein to "this Company", it is deemed to read "these Underwriters"*

## Legality Clause

It is a condition of *this insurance* that *you* and (so far as *you* can control the matter) anyone in command of *the Vessel* comply with any relevant laws and ensure that *the Vessel* conforms in all respects with any applicable safety regulations and obtain any permits or licences required by the law of any countries having jurisdiction over the waters in which *the Vessel* is navigated.

Uninsured Boater Coverage **P.** 10

The Lloyd's Privacy Policy Statement (LSW 1135) must be provided to the insured as follows:

---

**LLOYD'S PRIVACY POLICY STATEMENT**

UNDERWRITERS AT LLOYD'S, LONDON

We, the Certain Underwriters at Lloyd's, London that have underwritten this insurance want you to understand how we protect the confidentiality of nonpublic personal information we collect about you.

INFORMATION WE COLLECT

We collect nonpublic personal information about you from the following sources:
   □a) Information we receive from you on applications or other forms;
   □b) Information about your transactions with our affiliates, others or us; and
   □c) Information we receive from a consumer-reporting agency.

**INFORMATION WE DISCLOSE**

We do not disclose any nonpublic personal information about you to anyone except as is necessary in order to provide our products or services to you or otherwise as we are required or permitted by law (e.g., a subpoena, fraud investigation, regulatory reporting etc.)

**CONFIDENTIALITY AND SECURITY**

We restrict access to nonpublic personal information about you to our employees, our affiliates' employees or others who need to know that information to service your account. We maintain physical, electronic, and procedural safeguards to protect your nonpublic personal information.

**CONTACTING US**

If you have any questions about this privacy statement or would like to learn more about how we protect your privacy, please contact the agent/broker who handled this insurance.

---



**ENDORSEMENT**

It is hereby understood and agreed that with effect from inception the Conditions herein are amended to include the following clauses

### INSTITUTE EXTENDED RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE

**This clause shall be paramount and shall override anything contained in this insurance inconsistent therewith**

1.    In no case shall this insurance cover loss damage liability or expense directly or indirectly caused by or contributed to by or arising from

   1.1.    ionising radiations from or contamination by radioactivity from any nuclear fuel or from any nuclear waste or from the combustion of nuclear fuel

   1.2.    the radioactive, toxic, explosive or other hazardous or contaminating properties of any nuclear installation, reactor or other nuclear assembly or nuclear component thereof

   1.3.    any weapon or device employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matte.

   1.4.    the radioactive, toxic, explosive or other hazardous or contaminating properties of any radioactive matter.  The exclusion in this sub-clause does not extend to radioactive isotopes, other than nuclear fuel, when such isotopes are being prepared, carried, stored, or used for commercial, agricultural, medical, scientific or other similar peaceful purposes.



### INSTITUTE CHEMICAL, BIOLOGICAL, BIO-CHEMICAL, ELECTROMAGNETIC WEAPONS AND CYBER ATTACK EXCLUSION CLAUSE

**This clause shall be paramount and shall override anything contained in this insurance inconsistent therewith**

1.   In no case shall this insurance cover loss damage liability or expense directly or indirectly caused by or contributed to by or arising from

   1.1    any chemical, biological, bio-chemical or electromagnetic weapon

   1.2    the use or operation, as a means for inflicting harm, of any computer, computer system, computer software programme, computer virus or process or any other electronic system.

**All other terms, clauses and conditions herein remain unaltered.**

# Application Notice

- You must complete Parts A and B, and Part C if applicable
- Send any relevant fee and the completed application notice to the court with any draft order, witness statement or other evidence
- It is for you (and not the court) to serve this application notice

| In the | **High Court of Justice**<br>**Queen's Bench Division**<br>**Commercial Court**<br>**Royal Courts of Justice** |
|---|---|
| **Claim No.** | 2006 Folio 410 |
| **Warrant no.**<br>(if applicable) | |
| **Claimant(s)**<br>(including ref.) | TALBOT 2002 UNDERWRITING CAPITAL LIMITED OF LLOYD'S SYNDICATE Nos 2001.2003,2987,2020 and 1084 |
| **Defendant(s)**<br>(including ref.) | (1) JEAN MAURICE GEORGES BERGERON<br>(2) CAVALAM LIMITED<br>(3) CAVLAM BUISNESS LIMITED |
| **Date** | |

**You should provide this information for listing the application**

Time estimate 3 (hours) (mins)

Is this agreed by all parties? Yes ☐ No ☑

Please always refer to the Commercial Court Guide for details of how applications should be prepared and will be heard, or in a small number of exceptional cases can be dealt with on paper.

## Part A

**1. Where there is more than one claimant or defendant, specify which claimant or defendant**

~~(The claimant)(The defendant)~~[1]

The first named Defendant

**2. State clearly what order you are seeking (if there is room) or otherwise refer to a draft order (which must be attached)**

intend(s) to apply for an order (~~a draft of which is attached~~) that[2]

1. A declaration that the Court has no jurisdiction or will not exercise its jurisdiction; and
2. Pursuant to CPR Part 6 and CPR Part 11 the Orders dated 25 April and 30 July 2007 giving the Claimants permission to serve the Claim Form on the 1st Defendant out of the jurisdiction be set aside and the service of the Claim Form by which this claim was commneced be set aside and all subsequent proceedings in this claim be stayed or that such relief may be granted to the 1st Defendant as may be appropriate;
3. That this claim be dismissed with costs to be assessed and paid by the Claimants to the 1st Defendant and the costs of this application be the 1st Defendant's costs in any event.

**3. Briefly set out why you are seeking the order. Identify any rule or statutory provision**

because[3]

1. This action concerns a marine insurance policy issued by Lloyd's purchased by the 1st and 3rd Defendants from Yachtsure Insurance in the state of Maryland USA in respect of a private yacht "Amira" . The 1st and 3rd Defendants dealt with Yachtsure as a consumer. The 1st Defendant is a citizen of France domiciled in the Bahamas. The 3rd Defendant (a limited company incorporated in the British Virgin Islands) has not been served. The 2nd Defendant does not exist. Amira sank on 18 April 2004 whilst moored against a wharf at Margarita Island, Venezuela;
2. Accordingly Regulation (EC) No:44/2001 does not apply and England is not a convenient forum for the reasons set out in the 1st Defendan's witness statement;
3. In the alternative if it be determined that the 1st Defendant is domiciled in France proceedings may only be brought in France pursuant to Regulation Article 12.1

---

The court office at the Admiralty & Commercial Registry, Royal Courts of Justice, Strand, London WC2A 2II

is open from 10am to 4.30 pm Monday to Friday. When corresponding with the court please address forms or letters to the Clerk to the Commercial Court and quote the claim number.

N244 (CC) - w3  Application Notice (April 1999)    Crown Copyright. Reproduced by Sweet & Maxwell Ltd

**Part B**

(The claimant)(The defendant)[1] wishes to rely on: *tick one:*

the attached (witness statement)(affidavit) ☑    (the claimant)(the defendant)'s[1] statement of case ☐

evidence in Part C overleaf in support of this application ☐

| Signed | | Position or office held | |
|--------|--|-------------------------|--|
| | | (if signing on behalf of firm, company or corporation) | |

(Applicant)('s litigation friend)('s solicitor)

| 4. If you are not already a party to the proceedings, you must provide an address for service of documents | Address to which documents about this claim should be sent (including reference if appropriate)[5] | | *if applicable* |
|---|---|---|---|
| | | Tel. no. | |
| | | fax no. | |
| | | DX no. | |
| | Postcode | e-mail | |

**Part C**

Claim No. | 2006 Folio 410

(Note: Part C should only be used where it is convenient to enter here the evidence in support of the application, rather than to use witness statements or affidavits)

(The claimant)(The defendant)<sup>(1)</sup> wishes to rely on the following evidence in support of this application:

**Statement of Truth**

*(I believe)(The applicant believes) that the facts stated in this application notice are true

*I am duly authorised by the applicant to sign this statement

Full name.......................................................................................................................

Name of*(Applicant)('s litigation friend)('s solicitor)

......................................................................................................

Signed | Position or office held (if signing on behalf of firm, company or corporation)

*(Applicant)('s litigation friend)('s solicitor)

*delete as appropriate | Date

IN THE HIGH COURT OF JUSTICE          CLAIM No: 2006 Folio 410
QUEEN'S BENCH DIVISION
COMMERCIAL COURT


Between:

TALBOT 2002 UNDERWRITING CAPITAL LIMITED OF LLOYD'S
SYNDICATE No:1183
(Suing on behalf of itself for its proportion of 100% and as representative
underwriter on behalf of all other members of Lloyd's Syndicate
Nos 2001,2003, 2987,2020 and 1084)

<u>Claimant</u>


and


·(1) JEAN MAURICE GEORGES  BERGERON
(2) CAVALAM LIMITED
(3) CAVLAM BUSINESS LIMITED

<u>Defendants</u>


<u>WITNESS STATEMENT</u>


Suffolk House,
Nassau,
Commonwealth of Bahamas

**IN THE HIGH COURT OF JUSTICE**                    CLAIM No: 2006 Folio 410
**QUEEN'S BENCH DIVISION**
**COMMERCIAL COURT**

Between:

**TALBOT 2002 UNDERWRITING CAPITAL LIMITED OF LLOYD'S**
**SYNDICATE No:1183**
**(Suing on behalf of itself for its proportion of 100% and as representative**
**underwriter on behalf of all other members of Lloyd's Syndicate**
**Nos 2001,2003, 2987,2020 and 1084)**

<u>Claimant</u>

and

**(1)  JEAN MAURICE GEORGES  BERGERON**
**(2)  CAVALAM LIMITED**
**(3)  CAVLAM BUSINESS LIMITED**

<u>Defendants</u>

<u>WITNESS STATEMENT</u>

I, JEAN MAURICE GEORGES BERGERON, retired, of Suffolk House, Nassau,
Commonwealth of Bahamas will say:

1. I am the above first named Defendant. This witness statement is in support of my
application to discharge the without notice permission to serve the Claim Form on me
and for an order dismissing and/or staying proceedings on the ground of *forum non
conveniens*. The Claimant is the insurer of private yacht MY Amira, which sank on
18 December 2004. The Claimant claims against the Defendants a negative
declaration in the English Courts that it is not liable to indemnify the Defendants. So
far as I am aware these proceedings have been served only on me. Acknowledgment
of service has been returned on my behalf indicating that I dispute jurisdiction. The
third named Defendant Cavlam Business Limited ("CBL") and myself have issued a
complaint in the United States District Court Southern District of New York (Index
N0.08 cv2225) against the Claimant for a declaration of their rights under the policy

and punitive damages, (a copy of the Complaint is included in exhibit "JMGB1"at Tab 1)

2.  The history of this action in this Court is as follows:

3 May 2006          Claim Form issued (with permission of Timothy Walker J.)

20 October 2006     Claim Form renewed until 5 May 2007

2 May 2007          Time for service extended by 3 months to 5 August 2007 with
substituted service ordered on New York attorneys Lynch Rowin in
                    respect of my self (Langley J.)

30 July 2007        Order 2 May 2007 re-served (direction for service of
Acknowledgment of Service within 22 days of service/Claimant to file
                    Particulars of Claim with 28 days/ Defence to be filed within 28
days of service of Particulars of Claim/ permission to set aside
                    order

15 August 2007      Acknowledgment of Service

21 September 2007   Action stayed 3 months (Aikens J.)

18 December 2007    Further stay 2 months (Creswell J.)

25 February 2008    Further stay 2 months (Walker J.)

### Domicile

3   I was born in Bordeaux, France on 24 May 1933; I am approaching 75. About 21 years ago I emigrated to the Bahamas where I intended to live out the rest of my life and the Bahamas became my domicile of choice. I share an apartment with friends and although I spend a lot of time travelling, over the last two decades the Bahamas has been my home and it is to where I always return. Accordingly although my nationality is French citizenship I ceased to be domiciled in France since the mid-1980's. I have annually renewed residence in the Bahamas and have become fully integrated in Bahamian social life with no longer more than minimal contacts with France. Throughout the 1990's until I started to cruise, I was involved with the Bahamian Rugby Football Union, for which I was in charge of international relationships with FIRA (La Federation International de Rugby Amateur) and IRB (International Rugby Board). I obtained for the Bahamian Rugby Football Union subsidies for the development of youth rugby and an invitation for a Bahamas team to participate in Uruguay for the first Seven's Rugby World Cup. I was also manager of the Bahamas national team for the 1998 Commonwealth Games in Kuala Lumpur, (please see copies permits to reside issued by the Commonwealth of the Bahamas, immatricule certificates issued by the French Consulate in Miami, most recent Bahamas driver's licence and XVI Commonwealth Games Accreditation contained in exhibit "JHGB1"at Tab 2). Please also see my current and previous passport which

were issued by "Le Directeur des Francais a l'etranger et des etrangers en France - Le Ministre des Affaires Etrangeres" which shows the extent of my travels. As the Court will be aware the Bahamas is an independent state in the Caribbean.

4.    The second named defendant does not exist.

5.  The third named defendant, CBL whose address is as shown in the Claim Form is 1st Floor, Columbus Centre Building, PO Box 901, Road Town, Tortola, British Virgin Islands, was incorporated in the British Virgin Islands as an International Business Company on 20 July 1998. CBL is shown in British Virgin Islands certificate of registry as the registered owner of MY Amira on 19 May 1995 (for company documents and Amira certificate of registry please see exhibit "JHGB1"Tab 3). The entire shareholding of CBL is owned by me.

6.  Since about 2000 I have increasing spent more and more time cruising the Caribbean and the US Atlantic coast using the Bahamas as my base. I have no place of residence in France and my domicile outside of France is recognised by the French authorities.

7.  For the purposes of Council Regulation (EC) No 44/2001 of 22 December 2000 on jurisdiction and the recognition and enforcement of judgments in civil and commercial matters (the Regulation) and its predecessor the Brussels Convention neither CBL nor I are domiciled in France or any EU member state. I am domiciled in the Bahamas and CBL is domiciled in British Virgin Islands.

8.  Insurance represented by Policy M/03/08661 was purchased through International Marine Insurance, of 208 Piney Narrows Road, Chester, Maryland 21619 from Yachtsure Insurance , and on the telephone the broker said the policy should be in the name of CBL; however he mis-spelled "Cavalam" and left out the word "Business". He also added my name recording my interest. Please see Certificates of Insurance for the period 3 March 2003/ 3 March 2005 exhibit "JHGB1". Although the Certificate refers to insurance "underwritten by certain underwriters at Lloyd's" the identity of the Claimant is not disclosed. The insurance was sold and paid to International Marine Insurance in the United States.

### Jurisdiction

9.  Without prejudice to my detailed submissions on merits which I will deal with should this honourable court see fit to assume jurisdiction, I say that that New York State is clearly the  natural or appropriate forum and  clearly more appropriate than the English forum because:

(1).  No defendant (including myself) is domiciled in England;

(2)   To the extent that the Regulation applies to insurance, the rules of jurisdiction should be applied more favourably to the interests of the weaker party (see Preamble (13) of the Regulation);

(3)   Yachtsure (the trading name of Underwriting Risk Services Limited) belongs to the same group of companies as Talbot 2002 Underwriting Capital Limited;

(4)   Lloyd's has an office for the transaction of business at 25 West 53rd Street, New York, NY 10019.

(5)   The United States of America is the place of closest connection with the insurance contract;

(6)   Amira is located at the Caribbean Island of Margarita, Venezuela;

(7)   In the context of marine insurance the value of the claim is relatively modest;

(8)   This is a consumer dispute in that MY Amira is used for leisure not for business and that Yachtsure dealt with me as a consumer;

(9)   If the English Court assumes jurisdiction my rights as a consumer and/or "the weaker party" to defend or take legal action will be hindered;

(10)  The terms of the insurance limit the geographic area where MY Amira could be sailed (below 12.5 degrees north during the period 1 July/30 November);

(11)  As the Claimant does business in the United States it should expect to be sued there;

(12)  If the Claimant wanted choice of jurisdiction in the English courts it should have made that a contract term;

(13)  The Court is further asked to note that the policy is clearly designed for the United States market because it excludes claims under Federal "Longshoremen's and Harbor Workers' Compensation Act" and the currency referred to is US$;

(14)  The parties will not be on an equal footing if the action is allowed to proceed in England;

(15)  The costs of the action will increase disproportionately;

(16)  The issues are not complicated;

(17)  There will be inconvenience and considerable additional expense if my witnesses, experts and I have to travel to thousand of miles to London (the Court is asked to note that in places the Bahamas are only 55 miles from Miami;

(18)  The Defendants do not have the financial resources of Lloyd's of London;

(19)  A foreign insured is disadvantaged in the English courts with regard to remedies and costs (in the United States an insured may claim punitive damages).

STATEMENT OF TRUTH

The contents of this Witness Statement are true.

JEAN MAURICE GEORGES BERGERON

..........................................

27 March 2008