UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x

CAVLAM BUSINESS LTD. and JEAN MAURICE
BERGERON,                                                                08 CV 2225 (JGK)
                                                                         ECF Case

                      Plaintiffs,

    -against-

CERTAIN UNDERWRITERS AT LLOYD'S,
LONDON,

                      Defendant.

------------------------------------------------------------------------x

## REPLY MEMORANDUM OF LAW IN
## SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Joseph G. Grasso
Aaron D. Singer
Wiggin and Dana, LLP
450 Lexington Avenue
Suite 3800
New York, New York 10017
(212) 490-1700
(212) 490-0536 (fax)

Counsel for Defendants
*Certain Underwriters At Lloyd's London*

It is clear from plaintiffs' Opposition that their choice of this forum has no legitimate basis, but rather has everything to do with seeking tactical advantage. This case should be dismissed for any of three independent reasons, none of which plaintiffs have persuasively addressed. First, the Court should exercise its broad discretion to dismiss this action under the doctrine of *forum non conveniens*, as this case between foreign nationals and corporations involving an event in foreign waters has no connection to New York, and it would be extraordinarily inconvenient for defendants to have to try the case here. Second, the action should be dismissed because the policy at issue contains a forum selection clause calling for all disputes to be resolved in the courts of England. Lastly, the case is subject to dismissal under principles of international comity, as an action is currently pending between the same parties on the same issues in London.

Plaintiffs raise no compelling reason why a court in New York should assert jurisdiction over this matter. Rather, plaintiffs argue for "national jurisdiction" in the U.S., and they articulate reasons for choosing to bring their action in this Court that epitomize the sort of forum shopping that warrants dismissal under the doctrine of *forum non conveniens*: the possibility of a larger recovery in a U.S. court as opposed to an English court, the availability of certain discovery tools under the Federal Rules of Civil Procedure, the fact that they need not post a bond in a U.S. federal court. Given the lack of any connection whatever between the plaintiffs and New York, nor any connection between New York and the events at issue, it simply makes no sense to try the matter here.

It is equally clear from plaintiffs' Opposition that they have commenced this action in this Court not because it is the most sensible forum for resolution of this dispute, but in an attempt to avoid the pending action in London or at least to leverage their position in on-going

settlement negotiations. Plaintiffs urge the Court not to dismiss this action as a matter of comity because the London action, filed more than two years ago, remains in its initial stages. Plaintiffs ignore the fact that this is so because the parties have jointly requested that the London court stay that action while they continued to engage in settlement negotiations. In spite of this, plaintiffs have run to this Court in an effort to open another front. This Court should not countenance such tactics.

I.  THIS CASE SHOULD BE DISMISSED UNDER THE DOCTRINE OF *FORUM NON CONVENIENS*.

    A.  **Plaintiffs' Argument Concerning "National Treatment" Is Unavailing.**

Plaintiffs' argument that they are entitled to "national treatment" under the Convention of Establishment, Protocol and Declaration, November 24, 1959, U.S.-Fr., 11 U.S.T. 2398 (Plaintiffs' Opp. at 5-7), and that their choice of forum is therefore entitled to heightened deference, misses the mark. As a citizen of France residing in the Bahamas, Bergeron (and not Cavlam) is, at best, entitled to the lesser degree of deference afforded to a U.S. citizen permanently residing abroad who brings suit in the U.S.

The Second Circuit has consistently held that it is the plaintiff's *lawful residence* in the United States (and not citizenship) that affords a higher degree of deference to his choice of forum. This is so because it is assumed that U.S. courts are convenient to U.S. citizens residing in this country; in contrast, when a U.S. citizen living abroad brings suit in a U.S. court, that citizen receives diminished deference. *See, e.g., Iragorri v. United Technologies Corp.*, 274 F.3d 65, 73 n.5 (justifying a lesser degree of deference to the forum choice of a U.S. citizen residing abroad than a U.S. resident because "it would be less reasonable to assume the choice of forum is based on convenience" and motivated by legitimate reasons); *see also Varnelo v. Eastwind Transport, Ltd.*, No. 02 Civ. 2084, 2003 WL 230741, at * 12 (S.D.N.Y. Feb. 3, 2003) (holding

2

that "a foreign plaintiff residing overseas should receive the same diminished degree of deference as would be accorded an expatriate U.S. citizen living abroad"). Indeed, as the Second Circuit has noted:

> In all our cases in which we have deemed a plaintiff 'foreign' and accorded that plaintiff's choice of forum less deference, the plaintiffs involved were foreign corporations or foreign-national individuals residing abroad. We have never accorded less deference to a foreign plaintiff's choice of a United States forum *where that plaintiff was a U.S. resident*.

*Wiwa v. Royal Dutch Petrol. Co.*, 226 F.3d 88, 103 (2d Cir. 2000) (emphasis added). In the choice of a U.S. forum, residents of the United States, be they citizens or not, are entitled to greater deference than non-residents, be they citizens or not.

The treaty obligations plaintiffs invoke do not change the analysis. That the U.S. is obligated to provide French citizens with access to U.S. courts on the same basis as U.S. citizens does not result in heightened deference to plaintiffs' choice of a U.S. forum. As the Second Circuit held in *Pollux Holding Ltd. v. Chase Manhattan Bank*, a case relied upon by plaintiffs:

> Even assuming that, by treaty, plaintiffs were entitled to access American courts on the same terms as American citizens (an assumption made by the district court to the plaintiffs' benefit), our case law does not support plaintiffs' assumption that such a treaty would require that their choice of forum be afforded the same deference afforded to a U.S. citizen bringing suit in his or her home forum. ***Such a proposition impermissibly conflates citizenship and convenience, and assigns an artificial weight to citizenship.***

329 F.3d 64, 73 (2d Cir. 2003) (emphasis added). U.S. treaty obligations do not, therefore, have the effect on the *forum non conveniens* analysis that plaintiffs suggest.

**B.  Other Factors Weigh In Favor Of Dismissal.**

Plaintiffs cite two reasons for bringing this action in this District: (1) defendants, which plaintiffs misleadingly refer to as "Lloyd's," have an office in New York and, thus, are amenable to suit here; and (2) New York is "more convenient" than London for Bergeron. Even if both

were true, which they are not, the action would still be subject to dismissal under the doctrine of *forum non conveniens*, as the balancing of public and private interests weighs in favor of dismissal. Indeed, plaintiffs expressly acknowledge that the London court is capable of resolving all disputes between the parties. (Plaintiffs' Opp. at 11.)

With respect to plaintiffs' argument that "Lloyds" is present in this District, plaintiffs ignore entirely the fact that the defendant Underwriters are based in London, that all their witnesses reside in the United Kingdom, and that the courts of England have vastly more interest in the conduct and contracts of English insurers than does this Court.

Neither plaintiffs, nor the Underwriters, nor the policy at issue, nor any aspect of this dispute has any connection at all with New York. New York has no interest in the outcome of this matter, and no U.S. policy issues are at stake. This case does not belong here.

### 1. The Underwriters Are Not Present In This District.

In their opposition papers, plaintiffs misleadingly refer to "Lloyd's," rather than to the underwriting syndicates at Lloyd's who insured the AMIRA and who are the defendants in this action and the claimants in the London action. As described in Underwriters' moving papers, and in the Reply Declaration of Julian Bosworth, dated July 25, 2008 and submitted herewith, Underwriters consist of six syndicates at Lloyd's who subscribed to the policy covering the AMIRA, which was underwritten through Yachtsure (now known as Underwriting Risk Services Ltd.) in London.

The Corporation of Lloyd's (often referred to as "Lloyd's") is not an underwriting entity and has nothing to do with this case; rather, it is a marketplace, akin to the New York Stock Exchange, which provides support and administrative services for the underwriting syndicates at Lloyd's. *See Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1357-58 (2d Cir. 1993) (describing the

4

relationship between Lloyds and underwriters). All of the underwriting syndicates at Lloyd's, including the six syndicates in this case which insured the AMIRA, conduct their business from London. None of them undertake the activity ascribed to "Lloyd's" in plaintiffs' opposition papers. (Plaintiffs' Opp. at 10-11; Rowin Opp. Aff., Ex. D, ¶ 5.) That activity is undertaken by the Corporation of Lloyd's, which is not a party to this action. Thus, plaintiffs' arguments with respect to "Lloyd's" presence and activity in New York are inapposite.

### 2. The Balance of Public and Private Interests Favors England

The Underwriters commenced suit in London, naturally enough, because they are located there and because that is what is called for by the policy at issue. While plaintiffs argue that New York is more convenient to them than London, they do not argue that they lack the means to litigate this dispute in London (where discovery will be more limited and hence less burdensome than under the Federal Rules). Instead, they simply assert, without any support, that the taking of third party witness depositions in the United States, Venezuela, and parts of the Caribbean will be less expensive for U.S. counsel.[1] (Plaintiffs' Opp. at 11-12.) Plaintiffs do not address at all the presence of the Underwriters, and all of their witnesses, in England.

Plaintiffs argue that this is a "cosmopolitan" dispute, and therefore no jurisdiction has an interest in it. This argument ignores the fact that the Underwriters are based in England, and that the contract documents call for resolution of all disputes by the courts of England. The courts of England have an interest in the conduct of insurers based in London, insurance policies issued by

---

[1] As plaintiffs admit, the non-party witnesses from Venezuela and the Caribbean would testify by deposition no matter where the trial is located. (Plaintiffs' Opp. at 8.) In fact, plaintiffs' own submissions indicate that the only non-party witnesses who would travel to London are: (1) plaintiffs' insurance agent; and (2) plaintiffs' nautical surveyor (an expert, whose location is entitled to little weight). *Varnelo*, 2003 WL 230741, at *20 n.40. Although Mr. Bergeron claims that a trial in London would be "seriously inconvenient" for him, he admits, in the papers he intends to file with the English court, that he "spend[s] a lot of time travelling." (Bergeron Opp. Aff., Exh. D, ¶ 3.) In fact, when the M/Y AMIRA sank, Mr. Bergeron was staying in Paris to conduct personal business. (Bergeron Opp. Aff. at ¶¶ 10-12).

5

those insurers, and the construction and enforcement of such policies. Plaintiffs can articulate no reason why the courts of New York should have any interest in the dispute.

*Ramirez de Arellano v. Starwood Hotels & Resorts Worldwide, Inc.*, 448 F. Supp. 2d 520 (S.D.N.Y. 2006), a case cited repeatedly by plaintiffs, supports the Underwriters' position. There, a U.S. citizen residing in Puerto Rico – where there is, of course, a United States District Court – sued the defendant in this District for a theft that occurred at a hotel in Spain indirectly owned by the defendant. In evaluating the defendant's motion to dismiss on *forum non conveniens* grounds, the court noted that the motion was "strange," as the defendant was headquartered within this District, yet argued that it would be more convenient to litigate the claims against it in Spain. *Id.* at 524. Because the case had been brought by a U.S. citizen residing in a U.S. territory, the court held that the plaintiff's choice of forum was entitled to great deference, and that this District should be considered as much her "home forum" as the United States District for the District of Puerto Rico for purposes of a *forum non conveniens* analysis. *Id.* at 526. The court went on to hold that Spain was not an adequate alternative forum, and that the balancing of public and private interests favored maintaining the action in the plaintiff's chosen forum. *Id.* at 527-531. This case is everything that *Ramirez de Arellano* was not – here, the defendants have previously, and properly, brought an action in their home forum to resolve this dispute; plaintiffs are, respectively, a foreign corporation and a foreign national residing outside the U.S.; plaintiffs concede that England is an adequate alternative forum; and the balancing of public and private interests favor dismissal.

### 3.     Plaintiffs Have Engaged in Forum Shopping

In spite of their hollow claims of convenience, plaintiffs' true motivation for bringing this action in this forum is readily apparent from their Opposition papers and their complaint. First,

6

plaintiffs claim that they will be disadvantaged under English procedure, as the parties will not be able to depose each other's experts. (Plaintiffs' Opp. at 12.) Second, Bergeron claims that the Underwriters may obtain an order in London requiring him to post a bond for litigation expenses, including the Underwriters' attorney fees. (Plaintiffs' Opp. at 12-13.) Finally, in their complaint, plaintiffs seek an award of punitive damages, which would be unavailable under English law. *Cresswell v. Prudential-Bache Securities, Inc.*, No. 83 Civ. 2099, 1986 WL 14921, at *2 (S.D.N.Y. Dec. 23, 1986). None of these are legitimate reasons, nor do they relate to the *convenience* of this District to plaintiffs or its considerable inconvenience to the Underwriters.

## II.  THE FORUM SELECTION CLAUSE IS VALID AND ENFORCEABLE

Under basic principles of contract law, the forum selection clause is part of the contract. In his affidavit, plaintiffs' insurance agent, Al Golden, states that he received the February 20, 2004 renewal quotation, which contained the forum selection clause. (Golden Opp. Aff. at ¶ 4.) Thus, Mr. Golden had actual knowledge of the forum selection clause. Thereafter, IMIS requested that the Underwriters renew the insurance. This acceptance could only have been of the terms of the February 20, 2004 renewal quotation. Mr. Golden wrote a separate letter to Mr. Bergeron, informing him of the renewal quotation, and, in response, Mr. Bergeron wired the premium to IMIS, which then forwarded the premium to the Underwriters. (*Id.* at ¶ 5). IMIS, in its role as plaintiff's agent, received the quotation that contained the forum selection clause and thereafter requested renewal of (and forwarded payment for) the AMIRA policy. Under principles of English and European law, the forum selection clause was incorporated into the concluded policy. (Passmore Decl. at ¶¶ 8-12.)[2]

---

[2] English and European cases cited herein and in the July 30, 2008 declaration of John Passmore ("Passmore Decl.") are attached to the Passmore Declaration submitted herewith. The text of the Rome Convention and the Brussels regulation may be found at http://www.rome-convention.org/instruments/i_conv_cons_en.htm and http://eur-lex.europa.eu/LexUriServ/LexUriServ.do?uri=CELEX:32001R0044:EN:HTML

Although the Underwriters respectfully suggest that it is a question best determined by the London court where an action between the parties is already pending, the forum selection clause is valid and enforceable under English law, which governs the policy.[3] The clause clearly satisfies Article 23 of Council Regulation (EC) 44/2001 ("the Brussels Regulation"), which requires that it be in writing – as it was in the February 20 quotation. The forum selection clause is therefore indisputably enforceable against Cavlam. As concerns Bergeron, the clause does not run afoul of the Unfair Terms in Consumer Contracts Regulations 1999 (the "Unfair Terms Regulations"). Under the Unfair Terms Regulations, a term is unfair if, contrary to requirements of good faith, it causes a significant imbalance in the parties' rights and obligations, to the consumer's detriment:

> The requirement of good faith in this context is one of fair and open dealing. Openness requires that the terms should be expressed fully, clearly and legibly, containing no concealed pitfalls or traps. Appropriate prominence should be given to terms which might operate disadvantageously to the customer.

*First National Bank* [2002] 1 AC 481; *see also* Passmore Decl. at ¶ 18. Here, the forum selection clause does not cause any imbalance in the rights or obligations imposed on the parties, and applies in an even-handed way to all parties, requiring both parties to sue in England. The clause appeared in plain language on the renewal quotation, where it was prominently placed on the second page, with a reference to it on the first page. It was expressed fully, clearly and

---

[3] Under the Rome Convention, the choice of England as the forum for resolution of disputes implies a choice of English law. (Passmore Decl. at ¶ 30.) Additionally, pursuant to Article 4 of the Rome Convention, the applicable substantive law is the law of the country where the party who is to effect the performance which is characteristic of the contract -- here, the Underwriters – had, at the time of the conclusion of the contract, its principal place of business, unless the circumstances in their totality suggest that the contract is more closely connected with another country. (*Id*.) Here, there are no circumstances showing that any other country than England – and certainly not the U.S. – is more closely connected to the policy at issue. Decisions in insurance cases show that where insurance is written on the London market, it is often decided that England is the proper forum, because English courts are regarded as the natural forum for disputes about English insurance law, including legal issues dealing with insurance contract formation and interpretation. (*Id.* at ¶ 35; *see also CGU v. Szabo* [2002] 1 All ER (Comm) 83).

8

legibly, and contained no concealed pitfalls or traps. Its meaning is apparent to anyone who read it.

Plaintiffs' argument that this Court should not enforce the forum selection clause because it violates English public policy also misses the mark. As the Supreme Court case relied upon by plaintiffs makes clear, a U.S. court should enforce a valid forum selection clause unless doing so would violate a strong public policy of ***the United States.*** Plaintiffs make no such argument.

*M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1 (1972) supports the proposition that a U.S. court should enforce a forum selection clause selecting a foreign forum unless, among other reasons (fraud, etc.), enforcing the clause would violate a public policy of the United States. *Bremen* concerned a contract for the towing of a barge from Louisiana to Italy, and contained a clause for all disputes to be resolved before the London High Court. The barge was apparently damaged in international waters. As here, the defendant brought an action in London (where the court asserted jurisdiction based on the forum selection clause). In arguing that the clause should not be enforced by the U.S. court, the plaintiff argued that doing so would violate U.S. public policy, because an English court would enforce clauses in the contract purporting to exculpate the defendant from liability, in violation of American public policy rejecting exculpatory clauses in towage agreements, as articulated by the Supreme Court in *Bisso v. Inland Waterways Corp.,* 349 U.S. 85 (1955). The *Bremen* Court held that, in the very passage cited by plaintiffs: "A contractual choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy ***of the forum in which suit is brought***, whether declared by statute or by judicial decision." (emphasis added). Enforcing the clause would not violate U.S. public policy, because the *Bisso* decision concerned only towage in American waters.

Here, plaintiffs have brought suit in the Southern District of New York, and they have failed to articulate any reason why enforcing the parties' forum selection clause would violate a strong public policy of this forum. Moreover, even if this Court determines that the forum selection clause was not part of the contract, this case should be dismissed on *forum non conveniens* grounds.

### III.  PRINCIPLES OF COMITY FAVOR DISMISSAL

Plaintiffs argue that principles of comity do not warrant dismissal because the English suit remains "in an incipient stage." (Plaintiffs' Opp. at 21.) The English suit does not, however, remain in its infancy due to failings of the English court system—rather, as Plaintiffs admit, the parties jointly requested stays. (Plaintiffs' Opp. at 22.) Plaintiffs have not articulated a single reason why the present case, filed two years after the English proceeding began, should proceed in this District. As this Court has noted, "the temporal sequence of the filings" is a relevant factor in comity analysis. *Mastercard Int'l Inc. v. Argencard Sociedad Anonima,* No. 01 Civ. 3027, 2002 WL 432379, at *8 (S.D.N.Y. Mar. 20, 2002). When competing suits are filed "almost simultaneously," the comity argument is less persuasive, but, as in the present case, where there is a two year gap between the competing actions, comity favors dismissal.[4] *See id.; In re Air Crash Near Nantucket Island*, 392 F. Supp. 2d 461, 474 (E.D.N.Y. 2005) ("where the foreign action is pending rather than decided, comity counsels that priority generally goes to the suit filed first").

### CONCLUSION

For the foregoing reasons and for the reasons set forth in defendants' motion papers, defendants' motion to dismiss should be granted.

---

[4] In *Mastercard*, this Court also viewed disapprovingly a party's engagement of proceedings in a different jurisdiction "*ex parte,* while the parties were seeking to negotiate a settlement . . ." *Mastercard Int'l, Inc.*, 2002 WL 432379, at *8.

Respectfully submitted,

Dated: New York, New York
       August 1, 2008

  /s/ Joseph G. Grasso
Joseph G. Grasso
Aaron D. Singer
Wiggin and Dana, LLP
450 Lexington Avenue
Suite 3800
New York, New York 10017
(212) 490-1700
(212) 490-0536 (fax)

Counsel for Defendants
*Certain Underwriters At Lloyd's London*

19927\1\2072970.6

11