**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
─────────────────────────────────────

**CAVLAM BUSINESS LTD. and JEAN MAURICE**
**BERGERON,**

                     **Plaintiffs,**

          **- against -**

**CERTAIN UNDERWRITERS AT LLOYD'S,**
**LONDON,**

                  **Defendants.**
─────────────────────────────────────

              **08 Civ. 2225 (JGK)**

              **MEMORANDUM OPINION AND**
              **ORDER**

**JOHN G. KOELTL, District Judge:**

    This is an insurance dispute about a sunken yacht – the "Amira" (or, the "Yacht"). The owners of the Yacht were plaintiffs Cavlam Business Ltd. and its sole shareholder, Jean Maurice Bergeron ("Cavlam" and "Bergeron," respectively). The plaintiffs took out an insurance policy on the Yacht that was underwritten by defendants Certain Underwriters at Lloyd's, London ("Underwriters"). On December 18, 2004, the Yacht sunk while moored along a wharf off Venezuela, and the defendants denied coverage. The plaintiffs bring this action for a declaratory judgment that the sinking of the Yacht was covered by the insurance policy and that the value of the Yacht was the insured value of $510,000. The plaintiffs also seek punitive damages on the basis of the defendants' alleged bad faith in denying coverage.

The defendants move to dismiss the action on grounds of forum non conveniens, a forum selection clause in the insurance policy favoring English courts, and international comity.

I

The following facts and procedural history, taken from the Complaint and the affidavits and declarations submitted by the parties in connection with this motion, are undisputed unless otherwise indicated.[1]

Plaintiff Cavlam is a non-operating British Virgin Islands corporation formed by plaintiff Bergeron, the sole shareholder and principal thereof, for the purpose of holding formal title to a 1972 Bertram 63-foot motor yacht called the "Amira."  Mr. Bergeron purchased the Yacht in 1999 at a boat show in Florida. He is a citizen of France but resides in the Bahamas on a permanent basis.  (Bergeron Decl. ¶¶ 1-5.)  The defendants are six syndicates at Lloyd's of London that underwrite marine insurance policies on yachts, among other things.  They are located in London.[2]  (Absolom Decl. ¶¶ 1-2, 7.)

_____

[1]    "[I]t is the well established practice in the Southern District of New York to decide [forum non conveniens] motions on affidavits."  Alcoa S.S. Co., Inc. v. M/V Nordic Regent, 654 F.2d 147, 158 (2d Cir. 1980) (en banc).

[2]    The plaintiffs appear to conflate the defendants, certain underwriting syndicates at Lloyd's, London, with the insurance market Lloyd's of London. (See Compl. ¶ 6; Rowin Aff. Ex. D.)  The plaintiffs have brought suit against "certain underwriters at Lloyd's, London," not the insurance market Lloyd's of London itself.  "Lloyd's [of London] is not a company; it is a market somewhat analogous to the New York Stock Exchange . . . . There are over 300 syndicates competing within Lloyd's for underwriting business . . . ."  Roby

In 2003, Mr. Bergeron, acting through his Maryland-based insurance broker International Marine Insurance Services (IMIS) and on behalf of Cavlam, took out an insurance policy on the Yacht for the period March 3, 2003 to March 3, 2004. (Bergeron Decl. ¶ 8; Absolom Decl. ¶ 6.) The insurance policy was underwritten by the defendants, (Absolom Decl. ¶ 7), and was executed in London (Absolom Decl. Ex. G). The Yacht was insured for $510,000, (Absolom Decl. Ex. G), an amount based on an appraisal conducted by a Florida-based surveyor in 2000 at the request of the plaintiffs (Bergeron Decl. ¶ 7). The insurance policy was renewed for the period March 3, 2004 to March 3, 2005. (Golden Decl. ¶¶ 4-6; Absolom Decl. Ex. G.)

On December 18, 2004, the Amira sank at her moorings alongside a wharf in Venezuela. (Bergeron Decl. ¶ 11; Absolom Decl. ¶ 10.) Mr. Bergeron was in Paris at the time of the sinking and professes no knowledge as to how it occurred. (Bergeron Decl. ¶¶ 10, 12.) The plaintiffs filed a claim of insurance on December 23, 2004. Both the plaintiffs and the defendants hired surveyors to investigate the cause of the sinking. Based on the opinion of at least one of the defendants' surveyors that the yacht sank because the plaintiffs failed to maintain it in a seaworthy condition, the defendants

_____

v. Corp. of Lloyd's, 996 F.2d 1353, 1357 (2d Cir. 1993). Thus, the repeated factual assertion by the plaintiffs that the insurance market Lloyd's of London maintains an office in New York State, (see, e.g., Compl. ¶ 6), is irrelevant to this dispute.

denied the plaintiffs' insurance claim.  (Bosworth Decl. ¶¶ 2-
6.)  The defendants also dispute that the value of the Amira,
and the consequent amount of the insurance claim, is $510,000.
(Bosworth Decl. ¶ 8.)

On May 5, 2006, the defendants in this action, the
underwriters, brought suit against the plaintiffs in the High
Court in London.  The defendants sought a declaration that the
insurance policy did not cover the sinking of the Yacht.  On
August 17, 2007, Mr. Bergeron filed an acknowledgment of service
in the English proceedings.  (Bosworth Decl. ¶ 10.)  On March 5,
2008, the plaintiffs filed this action in the Southern District
of New York seeking a declaratory judgment that the insurance
policy covered the sinking, the value of the claim is $510,000,
and the plaintiffs are entitled to punitive damages because the
defendants acted in bad faith in denying the claim.  The parties
have represented that the English proceedings have been stayed
pending this Court's decision with respect to this motion.

The defendants move to dismiss this action on three
grounds.  First, they argue that the action should be dismissed
pursuant to the doctrine of forum non conveniens.  Second, they
argue that a forum selection clause in the renewal quotation
precludes the parties from litigating this case in the Southern
District of New York.  Third, they argue that the Court should

4

abstain from exercising its jurisdiction as a matter of international comity.


                                  II

        "[T]he doctrine of forum non conveniens contemplates the dismissal of lawsuits brought by plaintiffs in their favored forum in favor of adjudication in a foreign court." Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 101 (2d Cir. 2000). The Court of Appeals for the Second Circuit has established a three-step framework for resolving a motion to dismiss based on forum non conveniens that involves: (1) determining the degree of deference to be afforded to the plaintiff's choice of forum; (2) examining whether an adequate alternative forum exists; and (3) balancing the private and public factors enumerated by the Supreme Court in Gulf Oil Corp. v. Gilbert, 330 U.S. 501 (1947). See Iragorri v. United Tech. Corp., 274 F.3d 65, 73-74 (2d Cir. 2001) (en banc); see generally Base Metal Trading, S.A. v. Russian Aluminum, 253 F. Supp. 2d 681, 693-713 (S.D.N.Y. 2003) (applying framework). The Court applies each part of the framework in turn.


                                  A

        As an initial matter, the Court must determine the degree of deference that should be afforded to the plaintiff's choice

                                  5

of forum.  See Iragorri, 274 F.3d at 70-73; accord Monegasque De
Reassurances S.A.M. v. Nak Naftogaz of Ukr., 311 F.3d 488, 498
(2d Cir. 2002); Base Metal Trading, 253 F. Supp. 2d at 693. The
Supreme Court in Gulf Oil generally instructed that "unless the
balance is strongly in favor of the defendant, the plaintiff's
choice of forum should rarely be disturbed." Gulf Oil, 330 U.S.
at 508.  The Court of Appeals for the Second Circuit has
interpreted Gulf Oil to mean that "a court reviewing a motion to
dismiss for forum non conveniens should begin with the
assumption that the plaintiff's choice of forum will stand
unless the defendant meets the burden of demonstrating" the
factors discussed below.  Iragorri, 274 F.3d at 71.

    As the Court of Appeals explained in Iragorri, the degree
of deference varies depending on the circumstances.  While
plaintiffs who file suit in the district in which they reside
are entitled to great deference, less deference is owed to
foreign citizens suing in the United States and United States
residents suing outside of their home forum.  Id. at 71.  The
Court of Appeals has announced a sliding scale approach where
the "more it appears that a domestic or foreign plaintiff's
choice of forum has been dictated by reasons that the law
recognizes as valid, the greater the deference that will be
given to the plaintiff's forum choice." Id. at 71-72.  The key
to the analysis is distinguishing between a plaintiff's

legitimate right to select a forum and mere forum-shopping that
is designed to burden the defendants or to give the plaintiff a
tactical advantage.  See id. at 72-73.  Therefore,

> [T]he greater the plaintiff's or the lawsuit's bona
> fide connection to the United States and to the forum
> of choice and the more it appears that considerations
> of convenience favor the conduct of the lawsuit in the
> United States, the more difficult it will be for the
> defendant to gain dismissal for forum non conveniens .
> . . . On the other hand, the more it appears that the
> plaintiff's choice of a U.S. forum was motivated by
> forum-shopping reasons . . . the less deference the
> plaintiff's choice commands . . . .

Id. at 72 (footnotes omitted); see also F.D. Import & Export
Corp. v. M/V Reefer Sun, No. 02 Civ. 2936, 2003 WL 21396658, at
*3 (S.D.N.Y. June 17, 2003) ("In sum, courts should give greater
deference to the plaintiff's chosen forum when the choice is
based on legitimate factors . . . and give less deference when
the plaintiff is seeking a tactical advantage that may result
from peculiar conditions . . . .").

Applying the sliding scale approach established by
Iragorri, the plaintiffs' choice of forum is entitled to little
deference in this case.  The plaintiffs have no apparent
connection to the United States in general or to New York in
particular.  Mr. Bergeron is a French citizen who resides in the
Bahamas.  Cavlam is a non-operating British Virgin Islands
corporation.  The plaintiffs' papers are devoid of any
indication that they otherwise maintain a bona fide connection

to the United States or to this district.  Plainly, the
plaintiffs are without such a connection, and the deference
given to their choice of forum should be reduced accordingly.
Indeed, "it would be wrong to overlook the fact that th[ese]
plaintiff[s] [are] not in any practical sense seeking to
litigate at home." First Union Nat'l Bank v. Paribas, 135 F.
Supp. 2d 443, 453 (S.D.N.Y. 2001).

The lawsuit itself is also unmoored from the United States
and from New York.  The lawsuit arises out of an insurance
policy executed in London and underwritten by London-based
syndicates, for a yacht that sunk off Venezuela.  Nothing
connects this lawsuit to New York, and all that connects it to
the United States is the possibility that the plaintiffs will
call their Florida-based appraiser and/or their Maryland-based
insurance broker as witnesses.  However, the increased
convenience to these witnesses of litigating the case in the
United States is more properly considered under the third part
of the Iragorri analysis, in which the private and public
factors weighing in favor of each alternative forum are
balanced.  See, e.g., Iragorri, 274 F.3d at 73-74.  Therefore,
the presence of these potential witnesses in the United States
does not increase the deference owed to the plaintiffs' choice
of forum.  In any event, it is implausible that the witnesses
based in the United States will outnumber the witnesses based in

8

London, where the defendants are located and where the insurance policy was executed.

By their own admission, the plaintiffs are motivated by tactical concerns in bringing this action in New York, rather than in London.  The plaintiffs urge that if the action is litigated in London, they will be deprived of the opportunity to depose the defendants' experts, while the Federal Rules of Civil Procedure applicable in this district would allow such depositions to take place.  The plaintiffs also urge that the application of English procedural law may allow the defendants to obtain an order from the High Court requiring the plaintiffs to post a bond for litigation expenses that includes the defendants' legal fees.  Such arguments based on the favorable procedural rules of a chosen forum do not reflect a bona fide connection to that forum, and do not augment the deference owed to the plaintiffs' choice.  On the contrary, choosing a forum for tactical reasons is precisely the type of forum shopping to which little deference is owed.  See Iragorri, 274 F.3d at 72 (listing "attempts to win a tactical advantage resulting from local laws that favor the plaintiff's case" as example of forum shopping).  Cf. BlackRock, Inc. v. Schroders PLC, No. 07 Civ. 3183, 2007 WL 1573933, at *6 (granting motion to dismiss on forum non conveniens grounds in part because "it seems that [the

plaintiff] was motivated to bring suit in this forum based on considerations related to procedure available here").

The plaintiffs point to a treaty to which the United States and France are both signatories – the Convention of Establishment, Protocol and Declaration, November 25, 1959, United States-France, 11 U.S.T. 2398, T.I.A.S. No. 4625 (the "Convention") – as grounds for according significant deference to their choice of forum.  Under the Convention, Mr. Bergeron, as a citizen of France, is entitled to the same treatment in American courts that would be accorded to American nationals. See Convention Art. III(1).  In connection with this argument, the plaintiffs further argue that any district in the United States, including this district, should be considered their "home forum," and therefore they have brought this action in their home forum.  Neither of these arguments provides a basis for according the plaintiffs' choice of forum significant deference in this case.

First, American nationals residing abroad are given little deference with respect to their choice of a forum in the United States.  See, e.g., Varnelo v. Eastwind Transport, Ltd., No. 02 Civ. 2084, 2003 WL 230741, at *12 (S.D.N.Y. Feb. 3, 2003) ("[A] foreign plaintiff residing overseas should receive the same diminished degree of deference as would be accorded an expatriate U.S. citizen living abroad.").  Therefore, the

Convention is unavailing to the plaintiffs, because it only guarantees them the diminished deference owed to American nationals residing abroad, and does not entitle them to a presumption that their forum choice was based on convenience. See id. ("[The] line of treaty cases requiring 'equal access' to foreign plaintiffs is, however, easily harmonized with the line of cases granting less deference to plaintiffs residing overseas.  Foreign plaintiffs deserve less deference, not because they lack U.S. citizenship, but simply because their overseas residence vitiates any presumption that they would find the U.S. forum convenient.").

Moreover, the plaintiffs' bona fide connection to their chosen forum should be assessed with respect to New York, not the United States as a whole.  The Court of Appeals for the Second Circuit has held that for American citizens residing in the United States who sue foreign defendants, the entire United States, rather than strictly the district in which they reside, should be considered their home forum.  See Guidi v. Inter-Continental Hotels Corp., 224 F.3d 142, 146 n.4 (2d Cir. 2000) ("[T]he states where plaintiffs reside are not relevant to the forum non conveniens analysis in this case" where plaintiffs resided in America and alternative forum was Egypt); see also Reid-Walen v. Hansen, 933 F.2d 1390, 1394 (8th Cir. 1991) ("[T]he 'home forum' for the plaintiff is any federal district

in the United States, not the particular district where the plaintiff lives."); Bohn v. Bartels, No. 06 Civ. 1390, 2007 WL 4334667, at *7 (S.D.N.Y. Dec. 12, 2007) (plaintiff's home forum was United States as a whole where she was "a domiciliary of Texas" and alternative forum was in a foreign country).  In fashioning the rule in Guidi, however, the Court of Appeals only contemplated citizens residing in the United States.  See Guidi, 224 F.3d at 147 ("Plaintiffs, in contrast, are ordinary American citizens for whom litigating in Egypt presents an obvious and significant inconvenience . . . . This is not a case where the plaintiff is a corporation doing business abroad and can expect to litigate in foreign courts.").  It would make no sense to extend the rule in Guidi to cover plaintiffs who reside abroad, because the Court of Appeals has made clear that residency, not citizenship, is the basis for according deference to a plaintiff's choice of forum.  See Iragorri, 274 F.3d at 73 n.5 ("In Guidi, the plaintiffs were U.S. citizens who were also U.S. residents.  When Guidi spoke of the deference due to the choice of forum by U.S. 'citizens,' we understood those references to signify citizens who were also U.S. residents, rather than situations in which an expatriate U.S. citizen residing permanently in a foreign country brings suit in the United States.  As to such suits, it would be less reasonable to assume the choice of forum is based on convenience.") (internal

citations omitted); see also Varnelo, 2003 WL 230741, at *12.
Therefore, the plaintiffs' argument that their lack of a bona
fide connection to New York should not factor into the
determination of how much deference to accord their choice of
forum is without merit.  In any event, it would make no
difference to the analysis if the United States was used instead
of New York, because as discussed above, the plaintiffs have no
bona fide connection to the United States as a whole.

Mr. Bergeron's assertions that litigating the case in
London would be inconvenient for him because he lives in the
Bahamas and because it would cause him "severe financial
hardship," (Bergeron Decl. ¶ 25), are also unavailing.  Mr.
Bergeron will have to travel overseas to litigate the case
whether it is tried in New York or London; the Bahamas is in
between the two cities.  He does not explain why litigating the
case in London would be inconvenient, nor does he support his
assertion that it would cause him financial hardship with any
facts.  Therefore, his assertions as to inconvenience and
financial hardship are conclusory and unpersuasive.  See Piper
Aircraft Co. v. Reyno, 454 U.S. 235, 249 (1981) ("[D]ismissal
will ordinarily be appropriate where trial in the plaintiff's
chosen forum imposes a heavy burden on the defendant or the
court, and where the plaintiff is unable to offer any specific
reasons of convenience supporting his choice.").  Cf. Do Rosario

13

Veiga v. World Meteorological Organisation, 486 F. Supp. 2d 297, 306 (S.D.N.Y. 2007) (finding conclusory assertions about convenience of American forum insufficient to oppose motion to dismiss for forum non conveniens).

The only convenience truly at stake in this case is that of the defendants, because they are located in London, the alternative forum.  It would plainly be a significant inconvenience for the defendants to litigate the case in New York rather than London, whereas the plaintiffs have not shown why it would be inconvenient for them to litigate the case in London as opposed to New York.  Rather, they have only shown that there are tactical advantages available to the plaintiffs in New York.  Thus, the plaintiffs' choice of this district as the forum for this lawsuit warrants little deference.  See Iragorri, 274 F.3d at 71 ("[T]he reason we give deference to a plaintiff's choice of her home forum is because it is presumed to be convenient.").  Cf. Acosta v. JPMorgan Chase & Co., No. 05 Civ. 977, 2006 WL 229196, at *6 (S.D.N.Y. Jan. 30, 2006) ("Because plaintiffs' choice seems to have been guided more by considerations of tactical advantage than convenience, we accord it little deference.").

B

The second step in the Iragorri framework requires the defendant to identify an adequate alternative forum where the defendants are amenable to process.  See Piper Aircraft Co. v. Reyno, 454 U.S. 235, 254 n.22 (1981); Base Metal Trading, 253 F. Supp. 2d 681, 698 (S.D.N.Y. 2003).  Ordinarily, this requirement "will be satisfied when the defendant is amenable to process in the other jurisdiction.  In rare circumstances, however, where the remedy offered by the other forum is clearly unsatisfactory, the other forum may not be an adequate alternative . . . ." Aguinda v. Texaco, Inc., 303 F.3d 470, 476-77 (2d Cir. 2002) (internal quotation marks omitted).

In this case, the plaintiffs do not dispute that the High Court in London constitutes an adequate alternative forum where the defendants are amenable to process.  (Plaintiffs' Memorandum in Opposition at 11.)  Indeed, litigation commenced in the High Court in 2006.  It should also be noted that the differences in procedure between this Court and the English court, including the scope of discovery in the English Court, do not render the English court an inadequate forum.  See Flex-N-Gate Corp. v. Wegen, No. 08 Civ. 2502, 2008 WL 5448994, at *5 (S.D.N.Y. Dec. 29, 2008) ("Nor do procedural differences, including less liberal pretrial discovery rules, render [a foreign country] an inadequate forum.  It is well-established that 'some

15

inconvenience or the unavailability of beneficial litigation procedures similar to those available in the federal district courts does not render an alternative forum inadequate.'" (quoting Blanco v. Banco Indus. De Venez., 997 F.2d 974, 982 (2d Cir. 1993) (internal quotation marks omitted)).  Similarly, the unavailability of punitive damages in the High Court does not render it an inadequate forum.  See, e.g., Flores v. S. Peru Copper Corp., 253 F. Supp. 2d 510, 534 n.26 ("While the punitive damages plaintiffs at bar seek in their complaint are unavailable under Peruvian law, that does not demonstrate that the Peruvian courts are not an 'available' forum for purposes of forum non conveniens analysis.").  Therefore, the defendants have successfully identified an adequate alternative forum for this lawsuit.

C

Having determined that the plaintiffs' choice of forum is entitled to little deference, and having found the High Court to be an adequate alternative forum, the Court now weighs the private and public interest factors set forth by the Supreme Court in Gulf Oil.  The private factors to be considered in this case are: (1) the relative ease of access to sources of proof; (2) the convenience of willing witnesses; (3) the availability of compulsory process for attaining the attendance of unwilling

witnesses; and (4) the other practical problems that make trial easy, expeditious, and inexpensive.  See Gulf Oil, 330 U.S. at 508; accord Aguinda, 303 F.3d at 479.  "In applying these factors, the court should focus on the precise issues that are likely to be actually tried, taking into consideration the convenience of the parties and the availability of witnesses and the evidence needed for the trial of these issues."  Monegasque, 311 F.3d at 500 (internal quotation marks omitted).  In this case, the private factors weigh in favor of dismissal.

First, access to sources of proof does not tilt the balance significantly toward London or New York.  The chief source of physical evidence, the Yacht itself, is not located in or near New York or London.  London may be a source of documentary evidence relating to the insurance but it is difficult to conceive that it would be very burdensome to bring those documents to New York.  Thus, this factor is essentially a draw as between London and New York.

Second, the London forum will likely be more convenient for willing witnesses than the New York forum.  There are no witnesses located in New York.  Thus, if the case is tried in New York, every witness willing to testify in person, including the appraiser located in Florida and the insurance broker located in Maryland, will have to travel to do so.  By contrast, there are likely to be multiple witnesses located in London,

because the defendants are located in London, the insurance policy was executed in London, and at least one of the surveyors engaged by the defendants to investigate the cause of the sinking is located in London (Bosworth Decl. ¶ 7). <u>Cf.</u> <u>Realuyo v. Villa Abrille</u>, No. 01 Civ. 10158, 2003 WL 21537754, at *13 (S.D.N.Y. July 8, 2003) (analyzing where witnesses were "likely to be" based on relative connection of defendants and key documents to each alternative forum).  Thus, if the case is tried in London, there will be witnesses who will not have to travel in order to testify in person – including the defendants themselves, who otherwise would have to travel across the Atlantic to defend the lawsuit.  For these reasons, London represents a more convenient forum for willing witnesses than New York.[3]

The plaintiffs urge that because many of the witnesses in this case are likely to be located in Venezuela, and Venezuela is closer to New York than to London, the case should be litigated in New York.  But the plaintiffs concede that any witnesses located in Venezuela will appear by deposition, pursuant to the Convention, no matter where the case is located.

---

[3]     Under the Hague Convention on Taking of Evidence Abroad in Civil or Commercial Matters, Mar. 18, 1970, 23 U.S.T. 2255 (the "Convention"), to which both the United States and the United Kingdom are signatories, the testimony of any non-party English witnesses unwilling to travel to New York to testify in person could be taken by deposition.  However, neither party has indicated that the testimony of any such witnesses would be taken by deposition, rather than in person.  In any event, "there is a preference in this Circuit for live trial testimony." <u>BlackRock</u>, 2007 WL 1573933, at *9.

(See Plaintiffs' Opposition at 12 ("[T]he Hague Convention will
have to be used to obtain their testimony no matter where this
dispute is litigated . . . .").)  Thus, those witnesses will not
be more or less inconvenienced depending on where the case is
tried.  The plaintiffs' argument that it will be more difficult
and expensive for London counsel to obtain the testimony of
witnesses located in Venezuela than it would be for New York
counsel is unavailing, because "the convenience of counsel is
less compelling than any hardship to the witnesses," Dagen v.
CFC Group Holdings Ltd., No. 00 Civ. 54682, 2003 WL 21910861, at
*4 (S.D.N.Y. Aug. 11, 2003) (internal quotation marks omitted),
and as explained above, the New York forum presents a relative
hardship for witnesses willing to testify in person.

Thus, on the whole the convenience of willing witnesses
will be better served if this case is litigated in London,
rather than New York.

Third, London is the only forum where compulsory process
could conceivably be available to attain the presence of any
unwilling witnesses.  Compulsory process could not be available
in New York, because there is no reason to believe that there
will be any witnesses located in or around New York.  See Fed.
R. Civ. P. 45(b)(2).  Therefore, any American witnesses
unwilling to testify in person could not be compelled to do so
were the case litigated in New York.  By contrast, there is a

possibility that "[u]nwilling English witnesses could be compelled to testify in person" if the trial were held in London.  <u>First Union</u>, 135 F. Supp. 2d at 450.  Therefore, in the event that there are any unwilling witnesses in this case, the possibility that they might be compelled to testify exists only if the trial is held in London.

Fourth, the trial would be easier, more expeditious, and less expensive if it were held in London, rather than New York. The defendants are located in London.  Holding the trial in New York would require them to travel from London to New York.  It strains credulity that the trial would be more easily, expeditiously, and cheaply managed by having the defendants travel to New York, than by having Mr. Bergeron, who resides in the Bahamas, travel to London.  There is nothing connecting the plaintiffs or this lawsuit to New York.  Consequently, on balance the private interest factors counsel in favor of the dismissal of the case for forum non conveniens.

Similarly, an assessment of the public interest factors also counsels in favor of dismissal for forum non conveniens. The public factors are: (1) court congestion; (2) avoiding difficult problems in conflict of laws and the application of foreign law; (3) the unfairness of imposing jury duty on a community with no relation to the case; and (4) the interest of

communities in having local disputes decided at home.  See Gulf
Oil, 330 U.S. at 509; Aguinda, 303 F.3d at 480.

First, court congestion is not a significant factor.  This
Court could reasonably hear the case, but the High Court in
London could also hear the case and there is no indication that
there is any balance of congestion that should tilt the balance.
There is a declaratory judgment action pending in the High Court
in London, and there is no indication that the High Court in
London would be a less expeditious forum than this Court.

Second, the prospect of applying foreign law weighs
slightly in favor of dismissal.  English law is more likely to
be applied in this case than New York law, because the insurance
policy at issue was executed in London, the case has no ties to
New York, and the renewal quotation preceding the certificate of
insurance contained a forum selection clause in favor of English
courts.  See PT United Can Co. v. Crown Cork & Seal Co., No. 96
Civ. 3669, 1997 WL 31194, at *10 (S.D.N.Y. Jan. 28, 1997), aff'd
138 F.3d 65 (2d Cir. 1998) ("[F]or the same reasons that [a
foreign forum] has a greater interest in the litigation than New
York, [the foreign forum's] law is likely to apply to these
claims.").  The mere likelihood that foreign law will apply
weighs in favor of dismissing the case for forum non conveniens.
See Ioannides v. Marika Mar. Corp., 928 F. Supp. 374, 379
(S.D.N.Y. 1996) ("While the Court need not definitively resolve

the choice of law issue at this point, the likelihood that foreign law will apply weighs against retention of the action."). However, the likelihood that foreign law will apply tips the balance toward London only slightly, because English law is particularly amenable to application in United States courts. See Gross v. British Broadcasting Corp., 386 F.3d 224, 233-34 (2d Cir. 2004).

Third, it would be unfair to impose jury duty on New York residents in this case, in which a jury demand has been made. This factor weighs heavily in favor of dismissal, because the action has no connection to New York whatsoever. If the case were tried in New York, residents of this district would be called upon to find facts pertaining to a case that has no relation to their community.

Fourth, London has an interest in having this dispute decided in the High Court. Although this case is international insofar as the plaintiffs and defendants are from different countries, it is also local insofar as it concerns the practices of London-based underwriters. The heart of the dispute is not an inherently international transaction; rather, it is a simple insurance policy. The defendants' practices in underwriting insurance policies are plainly of interest to the community in which the defendants are located. Consequently, the public

factors to be considered weigh in favor of dismissal for forum non conveniens.

In sum, the High Court in London is the more appropriate and convenient forum for adjudicating this controversy.  The parties and the lawsuit itself are simply not connected to New York in any material way.  By contrast, London is integral to the parties and the lawsuit.  London is where the defendants reside, the insurance policy was executed, and multiple witnesses are likely to be located; moreover, the litigation will likely require the application of English law, and the case has already been pending in the High Court for over two years.  For the reasons explained above, the plaintiffs' choice of forum is entitled to little deference; the High Court in London constitutes an adequate and available alternative forum; and both the private and public factors identified by the Supreme Court in Gulf Oil weigh in favor of dismissal to the High Court in London.  Thus, this action belongs in London, not New York.

Because the Court finds that this action should be dismissed for forum non conveniens, it is not necessary to reach the additional grounds advanced by the defendants in support of dismissal.

CONCLUSION

For all of the foregoing reasons, the defendant's motion to dismiss for forum non conveniens is **granted**. The Clerk is directed to close Docket No. 3 and to enter Judgment dismissing the Complaint without prejudice and closing the case.

SO ORDERED.

Dated:    New York, New York
          March 13, 2009

John G. Koeltl
United States District Judge